### GEORGE S. LESTER v. CHARLES THOMPSON.

*Bill of particulars—Amendment—Mutual account—Evidence—Statute of limitations—Part payment.*

1. It is within the discretion of the trial court to permit a bill of particulars to be amended, by adding items proper to be considered, after the trial has commenced and a witness has been sworn.

2. In such a case, if the opposite party asks for time to investigate the items, or claims to be surprised by the allowance of the amendments, so as not to be prepared for trial, and his request for time in which to make such examination, or his application for a continuance, is denied, he may properly claim that his rights have been prejudiced.

3. In a suit by a husband on an open account, he was allowed to show the execution of a mortgage by himself and wife on their homestead to raise money for the defendant, and that defendant gave back a mortgage to plaintiff's wife for a like sum, which was held by the plaintiff, and on which nothing was ever realized, because of the sale of the land to satisfy a prior mortgage. It further appeared that plaintiff raised money by depositing the note given by defendant with the mortgage as collateral to his own note, and in this way plaintiff explained some of the items in his bill of particulars. No claim was made that the wife had ever made any claim for the money, or charged it to the defendant in any account. And it is held that there was no error in admitting the testimony.

4. Books of account containing charges for money paid, laid out, furnished, or lent are admissible in evidence under How. Stat. § 7526; and the rights of the opposite party are properly

guarded by instructing the jury that they are *memoranda* from which the party offering them may refresh his recollection, and testify in regard to the transactions themselves; citing *Montague v. Dougan*, 68 Mich. 98.

5. The question of whether the account sued upon was an open, mutual account current under the statute is held to have been fairly submitted to the jury within the ruling in *Kimball v. Kimball*, 16 Mich. 218; *Campbell v. White*, 22 Id. 178; *White v. Campbell*, 25 Id. 463; *Sperry v. Moore's Estate*, 42 Id. 354; *In re Hiscock's Estate*, 79 Id. 538.

6. A payment of a part of a debt, accompanied by acts or declarations showing that the debtor does not intend to pay more, will not revive the unpaid balance of a debt upon which the statue of limitations has taken effect.

Error to St. Clair. (Canfield, J.) Argued February 19, 1892. Decided April 8, 1892.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Avery Bros.* and *W. L. Jenks* (*Lincoln Avery*, of counsel), for appellant.

*Atkinson, Vance & Wolcott,* for plaintiff.

LONG, J. This suit was brought to recover a balance claimed as upon account current from 1872 to 1888.

Defendant married plaintiff's daughter in 1865, moved to Alpena, where plaintiff lived, in 1867, remained there till his wife died, in 1884, and then removed to Port Huron. This suit was brought in 1888. According to plaintiff's testimony, the account between the parties at the time of commencement of suit stood as follows:

CHARLES THOMPSON, DR.

| 1872. | | |
|---|---|---|
| March 2. | To cash | $50 00 |
| 1873. | | |
| April. | To cash paid for lumber furnished defendant | 69 94 |
| " | To cash | 137 00 |
| " | To cash paid for interest on note | 5 00 |

| Sept. | 1. | To cash paid for interest on note_____ | 3 | 50 |
| | | To account of P. M. Johnson & Co. vs. defendant, assumed by plaintiff_____ | 131 | 15 |
| | | To cash paid for lumber furnished defendant_____ | 700 | 00 |
| October. | | To balance of joint housekeeping expenses. | 133 | 05 |
| | | To cash_____ | 1 | 00 |
| | | To cash_____ | 2 | 25 |
| 1882. | | | | |
| Sept. 30. | | To lath furnished defendant_____ | 10 | 00 |
| 1883. | | | | |
| March 2. | | To 6 lbs. butter_____ | 2 | 10 |

CONTRA, CR.

| 1874. | | | | |
| Jan. | 15. | By due bill on Luce_____ | 15 | 00 |
| " | 24. | By cash_____ | 2 | 00 |
| " | " | By sundries_____ | 54 | 48 |
| April 15. | | By orders_____ | 30 | 00 |
| 1877. | | | | |
| Jan. | 12. | By account of Gebhart & Co. vs. plaintiff, credited to defendant_____ | 187 | 95 |
| 1878. | | | | |
| Feb'y 4. | | By 240 lbs. feed_____ | 3 | 60 |
| 1882. | | | | |
| Sept. 30. | | By work done on house of plaintiff's wife, | 67 | 22 |
| 1888. | | | | |
| May 10. | | By furniture_____ | 68 | 50 |

Defendant pleaded the general issue, with notice of the statute of limitations.

Plaintiff kept books of account, and entered upon the ledger account the items from 1873 to 1877 at page 123, and the items in 1882 and 1883, as a new account, upon page 118.

The plaintiff filed with his declaration a bill of particulars. On the trial, and after a witness had been sworn, the plaintiff, on motion, was permitted to amend his bill of particulars, against defendant's objection. By this amendment the plaintiff was permitted to insert an item of $187.95 on the credit side of the account, and also to insert a date of two different items of the account on the debtor side. Permitting this amendment constitutes

the first claim of error. There was no claim of surprise on the part of the defendant, and defendant did not ask an adjournment or continuance of the case for time to enable him to examine these items. If the items referred to are proper matters to be considered,—which I shall discuss later,—the court was not in error in allowing the amendment to be made. If the defendant wished time to investigate the items, or claimed any surprise by the allowance of the amendment, so that he was not prepared for trial, a continuance should have been asked by him; and, if overruled in that, he might properly claim that his rights had been prejudiced. But, as the matter is shown by the record, we cannot say that the court was in error in allowing the plaintiff to amend.

The plaintiff had judgment for $1,246.36.

Aside from the claim of error above discussed, the defendant claims that the court was in error in permitting certain evidence to be given, and in refusing certain requests to charge, as well as in certain portions of the charge as given.

It is first contended that the court was in error in permitting the plaintiff to give evidence relative to the value of a mortgage given by defendant to plaintiff's wife, and in permitting the plaintiff to state why the mortgage was taken back from defendant to plaintiff's wife.

The facts attending the transaction are, briefly, that in 1873 defendant went into business with one Gebhart, in the building of a planing-mill. In order to raise money to stock the mill, the defendant called upon the plaintiff, who induced his (plaintiff's) wife to join with him in the execution of a mortgage on the homestead at Alpena, which stood in the wife's name, of $1,000. The loan was made of one Minor, and the money paid out for defendant's benefit. At the time this mortgage was

given, defendant and wife made a mortgage on their property in Alpena to Mr. Lester's wife of $1,000. This mortgage was held by plaintiff, and not turned over to Mrs. Lester. It proved to be worthless, as the property was incumbered by a prior mortgage equal to its value, and the whole property went to pay it off. The $1,000 raised by the mortgage to Minor on the homestead of plaintiff's wife was mostly handled by plaintiff, and he testifies that he paid it out for the defendant, and that some of the items charged in the account arose from such payments. A note was given by the defendant with his mortgage, and deposited by the plaintiff in the bank as collateral to his own note, and moneys raised, which were also turned over to pay for stocking the mill and other purposes for defendant. It is this way that the plaintiff explains some of the items contained in his bill of particulars.

We do not think there was any error in permitting the proof to be given, or in permitting the explanation that the mortgage given by defendant was of no value. It is shown that the security was given upon the wife's homestead for the $1,000, some portion of which was paid out for the defendant by plaintiff, and, presumably by his wife's consent, charged by the plaintiff in the account against the defendant. It is not claimed that Mrs. Lester ever made any claim for this money, or charged it to the defendant in any account. The defendant gave a mortgage as security for the loan to Mrs. Lester, yet that mortgage remained in Mr. Lester's hands, and never was turned over to Mrs. Lester, and not a dollar was ever collected upon it. The course of dealing was such between Mr. Lester and his wife and the defendant that it is made apparent that it was the intention of the parties that the amounts loaned the defendant, realized from the Minor mortgage, were to be charged in

Mr. Lester's account. The court was not in error in permitting these explanations to be given.

It is also claimed that the court was in error in permitting the plaintiff to introduce in evidence his books of account. It was not error to permit the books of account to be used in evidence. The statute expressly provides that such books of account, containing charges for money paid, laid out, furnished, or lent, shall be received and admitted as evidence. How. Stat. § 7526. The court properly guarded the rights of the defendant in admitting the books in evidence by saying:

"They are *memoranda* from which the plaintiff may refresh his recollection, and testify in regard to the transactions themselves. The books are admitted for this purpose." *Montague v. Dougan,* 68 Mich. 98.

It is also claimed that the court was in error in refusing to instruct the jury, as requested by the defendant, that the account, as proved, was not a mutual, open account current under the statute. Upon this question the court charged the jury as follows:

"It is provided by our statute that all actions of *assumpsit* or on the case, founded upon any contract or liability, express or implied, shall be commenced within six years next after the cause of action shall accrue; and in all actions to recover the balance due upon a mutual and open account current the cause of action shall be deemed to have accrued at the time of the last item proved in such account. The transaction between the parties, as shown in evidence, extended back to the year 1873, and, of course, the transactions at that time, being much more than six years before this suit was commenced, would be barred by the statute unless they, with others dating within six years before the suit was commenced, constituted such mutual and open account current within the meaning of the statute. In this view it is important that you understand what is meant by such mutual and open account. It may be defined to be such as is made up of matters of set-off or accounts between the parties who have a mutual course of dealings under an implied

agreement that one account shall be an offset against the other so far as it will go. But the account must not all be on one side; it must be mutual, and the accounts must have been permitted to run along with a view by the parties of ultimate adjustment by settlement and payment of the balance; and it is this balance, which may constantly vary from time to time, which constitutes the debt, and the burden is upon the plaintiff to show the fact that such a balance of account existed in his favor by accounts brought down to within six years before this suit was commenced, and without any interval of six years between any of the items of account. That is, if such an interval in fact existed, the items before it would be barred, and no recovery could be had thereon,— that is, unless the claim has been revived by payment made on the account within six years before the commencement of suit, concerning which I will instruct you further."

This was a fair submission of the question whether it was an open, mutual account under the statute. It comes within the ruling of this Court *In re Hiscock's Estate,* 79 Mich. 538; *Kimball v. Kimball,* 16 Id. 218; *Campbell v. White,* 22 Id. 178; *White v. Campbell,* 25 Id. 463; *Sperry v. Moore's Estate,* 42 Id. 354,—if there was any evidence which the jury could consider which would make proper charges in the account the cash items of $1 and $2.25, the date of which the plaintiff was permitted to correct, and the item of $187.95, which the plaintiff was permitted to put into the bill of particulars by amendment. In the original bill of particulars the cash items bore no date. Standing in that way there was a lapse in the debit side of the account from October, 1873, to September 30, 1882, a period of nearly nine years. By the amendment these cash items were placed under date of January 1, 1877, and appear by the bill of particulars and proofs to be for cash paid for cleaning defendant's wife's dress, $2.25, and repairing ring, $1. The defendant denies all knowledge of these cash items.

He also denies that there was an arrangement by which the account of Gebhart & Co. should be credited to him by the plaintiff, and the testimony of the plaintiff is very unsatisfactory upon this point. So that from 1875 to 1882—a period of seven years—there is no item as to which defendant has not given testimony tending to show that it was no part of the open, mutual account between the parties. This being the case, it was at best a question for the jury as to whether the parties intended these transactions as a part of the mutual, open account. This should have been submitted to the jury as a question of fact.

*In Re Hiscock's Estate*, 79 Mich. 536, it was said:

"The statute of limitations, which excepts certain accounts from its operation, is confined to such as make 'a mutual and open account current.' It must be mutual as well as open. This, according to the consistent course of authority, means a course of dealing where each party furnishes credit to the other on the reliance that upon settlement the accounts will be allowed, so that one will reduce the balance due on the other. The doctrine is very well set forth, with the decisions, in Busw. Lim. c. 4, § 5; and is recognized in *Kimball v. Kimball*, 16 Mich. 218; *Campbell v. White*, 22 Id. 178; *White v. Campbell*, 25 Id. 463, and notes; *Sperry v. Moore's Estate*, 42 Id. 354."

The last item of credit in the account is for furniture—$68.50—purchased on May 10, 1888. The evidence is quite contradictory on the question of whether the amount of this furniture was to be credited upon the plaintiff's account with intent to revive the whole account. The plaintiff's testimony upon that matter is as follows:

"*A*. Here is a credit for some furniture I got of Mr. Thompson in May, 1888. The head of the page is 'May 10, 1888;' and I guess that is about the time.

"*Q*. Will you tell us how you came to get that?

"*A*. I took my account to Mr. Thompson some time before this, and asked for a settlement. I told him I

wanted to get a settlement of our old accounts. They had been running a long time, and I was getting afraid, and I wanted to settle, and I rendered him a bill of items. He looked it over, and said he could not pay that. He said to pay that bill would interfere with his business, and he could not do it, and wouldn't do it. Well, I told him I would take his notes, if he would give me his notes, and get a settlement. I told him if he would give me his notes I could get along with them. Well, he said he wouldn't give his notes. I made him an offer if he would settle it up then I would take his notes at six, twelve, eighteen, or twenty-four months, without an indorser; and I knew he could pay it in that time. That would be $250 apiece for the notes. That would be $1,000. I offered to settle for $1,000. He said he wouldn't give his notes to anybody. I told him I needed the money, and I would like to get it. I asked him then if he would give me his notes for $200. I told him then that I had broken up housekeeping two years before, and had disposed of many of my things in the house. I had to buy some stuff and some furniture, and I wanted to get some money to do it. I had not the means. Well, he said he would not give his note to anybody. Well, after he refused to give the $200, I asked him if he would let me have a little furniture,—let me have a little furniture on the account. He hesitated a little, but finally said he would, and wanted to know what I wanted. Well, I told him I only wanted a small bill. I wanted a bed-room set, with mattress and springs, and some dining-room chairs and a few other chairs. Well, he went out with me to look them over. He showed me a bed-room set, and I think he said he would put in a good mattress. I don't think I saw it. The springs I don't think I saw. And he showed me dining-room chairs and a bed-room set and bureau and wash-stand. He gave me the price of the bed-room set,—$28. And the mattress and springs, I don't think he gave me any price of them. I don't think I saw them. I told him what I wanted, and he said he would put them in."

It is claimed on the part of the defendant's counsel that the plaintiff's own testimony does not show that by this transaction the parties intended to revive the whole debt, and that there was nothing to submit to the jury

on that point. The rule is well settled that part payment is but evidence of an admission of an indebtedness; but an admission of an indebtedness, to take the case out of the statute, must be such as reasonably leads to the inference that the debtor intended to renew his promise to pay, which it evidently cannot do if it is accompanied by circumstances which repel the idea of an intention to pay. *Brisbin v. Farmer,* 16 Minn. 225; *Jewett v. Petit,* 4 Mich. 508; *Sigourney v. Drury,* 14 Pick. 390; *Hale v. Morse,* 49 Conn. 482. In the last case it was said:

"A payment [of a part of a debt] accompanied by acts or declarations showing that the debtor does not intend to pay more, will not revive the unpaid balance of a debt upon which the statute of limitations has taken effect."

The court submitted the question to the jury to determine whether it was the intent of the parties by this transaction to revive the whole debt. We think there was no evidence to go to the jury on that point; that the version of it given by the plaintiff does not tend to show that Mr. Thompson intended to do any such thing. He protested that he could not pay it, as it would interfere with his business, and he couldn't do it, and wouldn't do it. The court was therefore in error in submitting to the jury the question of the intent of the defendant to revive the whole account by letting the plaintiff have the furniture.

The last item of the account on the credit side to revive it, aside from this furniture, is for work on the house of plaintiff's wife, $67.22, under date of September 30, 1882; and, on the debit side, 6 pounds of butter, $2.10, under date of March 2, 1883. There is also an item on the debit side of lath furnished the defendant, $10, under date of September 30, 1882. If the suit was commenced

within six years after September 30, 1882, then the item of furniture was not necessary to be credited to prevent the bar of the statute, as there can be no question that up to that date the account was a mutual, open account current, if the jury believed the testimony of the plaintiff. The declaration is dated August 18, 1888, but it nowhere appears by the printed record, the briefs, or the manuscript record returned to this Court just when the *narr.* was served. We do find, however, in the manuscript record a copy of the bill of particulars, filed with the clerk of the circuit court September 25, 1888, so that we conclude the suit was commenced within the six years from the date of these two last items of debit and credit.

For the errors pointed out the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.