SWEET *v.* ELLIS.

STATUTE OF LIMITATIONS—PART PAYMENT—AUTHORITY OF AGENT.
    The running of the statute of limitations is not arrested by a payment made by an agent of the debtor a year and a half after receiving the money from the latter with instructions to make the payment.

Error to Van Buren; Buck, J. Submitted April 21, 1896. Decided May 26, 1896.

*Assumpsit* by Martin L. Sweet, survivor of the firm of M. L. Sweet & Company, against William S. Ellis and Charles E. Knapp, for a balance due on account. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*L. A. Tabor*, for appellant.

*Titus & McNeil*, for defendant Knapp.

MOORE, J. Plaintiff sued the defendants, seeking to recover the sum of $336.14 and interest. The declaration was on the common counts in *assumpsit*. The defendant Charles E. Knapp pleaded the general issue, and gave notice under his plea of the running of the statute of limitations.

It was the claim of the plaintiff that, in 1886, Sweet & Co. were engaged in buying and selling grain at Grand Rapids; that defendants were partners, doing business at Coopersville; that plaintiff received a letter reading as follows:

"Office of ELLIS & KNAPP,
          "Proprietors of Union Roller Mills, and Dealers in
               Flour, Feed, and Grain.
                         "COOPERSVILLE, MICH., Nov. 9, 1886.
"M. L. SWEET & Co.,
          "Grand Rapids.
     "*Gents:* Mr. Hermance said you would deposit money for us to purchase wheat with, with Mr. Rice. I saw Mr. Rice last evening, and made arrangements. I bought some wheat yesterday, and got the money from Mr. Rice. Please send money today. Hoping we can please you, we remain,
                         "Yours, etc.,
                              "ELLIS & KNAPP.
     "If you have any pointers, please let us hear from you. Also please have Mr. Flynn send us market reports.
                                   "W. S. ELLIS.
"P. S.   You can send check, and Mr. Rice will cash it."

He further claims that, after this letter was received, Sweet & Co. from time to time sent on money to Rice for defendants, amounting in the aggregate to over $3,000, and that from time to time they received wheat from the defendants; that on April 13, 1887, they received at the hands of Rice, from defendants, wheat and oats of the value of $157.33. He claims that on September 13, 1888, they received at the hands of Rice, from defendants, $29.68, leaving a balance due at that time of $336.14. The declaration was filed August 2, 1894. It is further claimed by plaintiff that the payment of $29.68 prevented the running of the statute of limitations.

It was the claim of the defendant Charles E. Knapp, and he so swore, that Ellis and he were partners simply to run a custom mill; that he never had any understanding or agreement that Ellis & Knapp were to engage in the business of buying wheat on the outside; and that he

was never a partner of Ellis in buying wheat, and had no knowledge that Ellis & Knapp were buying wheat, and no knowledge of any cash being in Rice's hands when Ellis left the mill; and denied ever making any arrangement in Rice's store to buy grain for plaintiff. Knapp also claims that the partnership was dissolved in December, 1886, and that his brother, E. J. Knapp, took his place. He further claims that Ellis quit the mill in April, 1887, and that, at that time, Ellis turned over to Rice, for Sweet & Co., all of the wheat and oats on hand, and the $29.68 remaining.

Testimony was introduced tending to show the claims of the respective parties. So much of this testimony as is necessary to understand the issues raised in the case is as follows: Mr. Sweet testified that after his firm received the letter of November 9, 1886, the firm furnished to the defendants money. He testified that he had a talk with Charles E. Knapp in July, 1894, at which time Knapp told him he was a partner with Ellis; that he borrowed the money to put into the concern. Sweet told Knapp he had come to settle, and was told by Knapp that he had not the money to pay it. He also testified that Knapp told him that Ellis and Knapp were partners in buying wheat and milling, and had not settled up their matters.

Mr. Rice testified that he knew Charles E. Knapp, and that Knapp and Ellis were engaged in the business of general milling and buying grain; that they were in the habit of giving orders on his store; that they bought wheat for Sweet & Co.; that the business was done through Rice, or Rice & Lilley; that the checks were turned over to Ellis & Knapp; that—

" Mr. Ellis and Mr. Knapp both came over to my store one evening, to see what arrangement they could make with me regarding money deposited with me by M. L. Sweet & Co. for them to buy wheat with. I entered into a sort of friendly arrangement and agreement with them that, if M. L. Sweet & Co. wanted to send me

money, I would put it in my safe, and, when they bought any grain, they might give a little check on me, the same as they would on any bank, and, when Mr. Sweet didn't have any money there, I would pay it out of my own, because I knew Mr. Sweet well. So we entered into a sort of a family, friendly affair, and that is the way I did business with them. * * * The money was paid out for wheat to different customers, as they came with the check of Ellis & Knapp, and called for it. * * * I . think it was discovered about that time [April, 1887] that there was a shortage, or going to be a shortage, of wheat enough to pay M. L. Sweet & Co. for the amount of money that had been deposited or drawn from me by them, from me really, or from M. L. Sweet & Co. It is my impression that Mr. Ellis came to me, and asked me to come over to the mill, and weigh up what grain there was on hand, and figure it up, and then take the value there, and then the balance of the money I had in my hands, and figure up, and see how much shortage there would be, and then instructed me to turn over this stuff to M. L. Sweet & Co., with what money I had in my hands for them.

"*Q.* Did you do so?

"*A.* I did, or turned it over to somebody else with instructions from Mr. Sweet. I think I turned it over— the property in the mill—to Mr. Hermance, the owner of the mill.

"*Q.* And did you return the money in your hands to M. L. Sweet & Co.?

"*A.* I did."

Rice also testified that this money was about $30, and was the last transaction of which he had any record. His further testimony in relation to the $30 was that eventually he turned it over to Sweet & Co; that it might have been a year later when he turned the money over; that it stood on his books in the name of Ellis & Knapp, as money belonging to them; that Ellis & Knapp left it with him in the spring of 1887, directing him to turn it over to Sweet & Co.; that the money was sent by him to Sweet & Co., and that he held it for Ellis & Knapp; that he never knew of any change in the partnership. It was shown by plaintiff's bookkeeper that the money was

in fact turned over September 13, 1888, and that Ellis & Knapp were at that time credited with it. E. J. Knapp gave testimony tending to show that he succeeded his brother as a partner in the firm of Ellis & Knapp, in December, 1886, and that the firm of Ellis & Knapp quit doing business in April, 1887.

After hearing counsel for plaintiff, the court, on its own motion, charged the jury as follows:

"*Gentlemen of the Jury:* The plaintiff brings this action against the defendants, claiming to recover upon an open account for moneys advanced for the purchase of wheat by the defendants. Under the undisputed testimony in the case, all these moneys were advanced more than six years before the beginning of this suit. The plaintiff, however, seeks to avoid the effect of this fact by showing that a certain credit was given to defendants by the plaintiff for moneys paid over in September, 1888. It is, however, shown by the testimony, and there is no dispute upon that fact, that at the time these moneys were paid over, and at the time they were directed to be paid over, the defendant Charles E. Knapp was not a member of the firm of Ellis & Knapp at all, so that this could not properly be a credit to that firm. This action was brought against both Ellis and Knapp, but the files of the case show that there was no service upon any one except the defendant Knapp, so that, if the action fails as to him, it must fail as to both; and, the plaintiff not having made out a case of any promise within the last six years, the defendant's notice under his plea that there was no promise within six years must prevail, and your verdict should be for the defendant."

Enough of the testimony has been cited to show that it was a disputed fact as to whether the partnership had ended when the payment of $29.68 was made; it being the claim of the plaintiff that as late as July, 1894, defendant Knapp admitted the partnership to be yet in existence. It does, however, appear, beyond any controversy, that no wheat was bought or milling done by the firm of Ellis & Knapp after April, 1887, and that on that date they turned over to Rice for Sweet & Co. all the

oats and wheat on hand, and the money, amounting to
$29.68, still in his hands, with directions to deliver it all
to Sweet & Co.· Rice did deliver the wheat and oats to
Hermance for Sweet & Co., April 13, 1887; and on that
date Ellis & Knapp were credited with the value of the
wheat and oats. Rice did not turn over the money until
September 13, 1888, when Ellis & Knapp received a
credit for it. There is nothing in the record to show that
defendants expected Rice to retain this money, and the
sole question is whether this payment by Rice, a year
after the·money was turned over to him, made without
the knowledge of the defendants, will prevent the running
of the statute of limitations.

Statutes of limitation are now generally considered to
be statutes of repose, and any act or declaration which is
to postpone their effect is closely scrutinized. 13 Am. &
Eng. Enc. Law, 750; *Ten Eyck* v. *Wing*, 1 Mich. 40.
In the *Case of Ten Eyck* there is a full discussion of the
law as it existed in the State as long ago as in 1848. It
was then said "that, whenever a new promise is set up to
remove the bar of the statute, it ought to be proved in a
clear and explicit manner, either expressly or by such an
unqualified acknowledgment as authorizes its implication."
An acknowledgment, or a payment which is to operate as
an acknowledgment, must be made by the debtor or his
authorized agent. 13 Am. & Eng. Enc. Law, 760, and a
large number of cases there cited. If Rice is regarded as
the agent of Sweet & Co., then the payment was made in
April, 1887, more than six years before the statute was to
run. If he is regarded as the agent of Ellis & Knapp,
then he was bound to turn in the property as directed.
He did turn over the oats and wheat in April, 1887.
There is nothing in the record from which an inference
can be drawn that he was authorized by defendants to
hold the money a year and a half, and then make a pay-
ment that would prevent the statute of limitations run-
ning in their favor.

"The rule is well settled that part payment is but evidence of an admission of an indebtedness; but an admission of an indebtedness, to take the case out of the statute, must be such as reasonably leads to the inference that the debtor intended to renew his promise to pay." *Lester* v. *Thompson*, 91 Mich. 254.

Authority given in April, 1887, to turn over money then in hand, would not authorize the making of a payment in September, 1888, that would take the claim out of the statute of limitations. No injustice was done the plaintiff by the circuit judge in taking the case from the jury.

The judgment is affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.