HERMAN E. BOSLER ET AL., EXECUTORS, APPELLEES, V. JOHN A. McSHANE, APPELLANT.*

FILED JANUARY 5, 1907. No. 14,589.

1. **Limitation of Actions: PAYMENTS.** Under the provisions of section 22 of the code, any payment upon a written contract for the payment of money made through the arrangement of the maker, or such payment as is the natural and reasonable sequence of his agreement, will stay the running of the statute of limitations.

2. ———. The payment of dividends upon the stock of a corporation assigned to the payee by the maker of a note as collateral security, and the application thereof as payments upon the note, will stay the running of the statute of limitations.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Rehearing allowed. See opinion, p. 91, *post.*

*W. D. McHugh,* for appellant.

*Joel W. West, contra.*

EPPERSON, C.

Plaintiffs, as executors of the last will and testament of J. H. Bosler, deceased, obtained judgment in the court below upon a promissory note. The defense was that the note was barred by the statute of limitations. The defendant, when he executed the note, assigned 100 shares of stock of the South Omaha Land Company as collateral security to plaintiffs' decedent, the payee. The original certificate was surrendered to the corporation, and in lieu thereof a new one issued to plaintiffs. The corporation paid to plaintiffs certain dividends upon the stock, which were indorsed upon the note. The note was barred unless the payment of the dividends tolled the statute.

Section 22 of the code provides: "In any cause founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same, shall have been made in writing, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise."

Defendant contends that such dividends do not constitute a payment upon the note such as will arrest the running of the statute, citing *Moffitt v. Carr,* 48 Neb. 403. It was there held: "Part payment, within the meaning of section 22 of the code of civil procedure, is a voluntary payment made by the debtor himself or by some one authorized by him to make such payment." The payment controlling the disposition of the question in that case was money realized from the sale of real estate in Missouri pledged by trust deed, and sold under the provisions of the trust deed by legal proceedings which were held equivalent to a judicial foreclosure in this state. The court held that the creditor therein obtained the payment through

the agency of the law, and that it was not a voluntary payment which would arrest the running of the statute. In *Whitney, Clark & Co. v. Chambers,* 17 Neb. 90, it was held: "The payment of a dividend by the assignee of an insolvent debtor is not such a part payment as will, under section 22 of the code, take the residue of the debt out of the statutory limitation, as against such debtor." In the opinion by Cobb, C. J., it was said: "Here the application of any portion of the property to the part payment of the notes and account sued on was not necessarily or probably in the mind of the defendant in error when he made the assignment for the benefit of his creditors.  *  *  * And as it appears to me, the payments made by said assignee on the said notes and account were made as the agent of the law and of the said creditors rather than as the agent of the said assignor." This rule was adhered to in *Connor v. Becker,* 62 Neb. 856. The cases above cited establish the rule that payments made by virtue of legal proceedings, or through the agency of the law, are not sufficient to stay the running of the statute.

Going now a little deeper into the above cited cases, and similar decisions of the courts of sister states, we find that the reason for the rule is that to bind a debtor, even to the extent of continuing the existence of a cause of action against him, the payment upon his debt must have been made with his consent, or through an agency created by him; in other words, it should be voluntary on his part. In *Whitney, Clark & Co. v. Chambers, supra,* it was further said: "As I understand the reasoning of the cases upon the section of the statute under consideration, it amounts to about this, that a part payment in order to bar the statute must be equivalent to an acknowledgment of an existing liability or to a promise to pay the same." And in *Moffitt v. Carr, supra,* it was said: "Such payment was not a voluntary one on the part of Carr, but one made *in invitum* and by operation of law, and that it did not arrest the running of the statute of limitations." See, also, *Kallenbach v. Dickinson,* 100 Ill. 427; *Hughes v.*

*Boone,* 114 N. Car. 54; *Harper v. Fairley,* 53 N. Y. 442; *Wolford v. Cook,* 71 Minn. 77. In *Adams v. Holden,* 111 Ia. 54, cited by defendant, it was held: "Application of rents and profits of lands by a grantee in possession, under deeds operating as mortgages, to the payment of the debt secured, will not operate to take a suit by the grantor to recover the lands from the bar of the statute of limitations, no voluntary payment by the grantor having been made." This case, we consider, had it been based on a statute similar to our own, would support defendant's contention. However, under the provisions of our statute, section 22 of the code, and the decisions of this court, we are unable to adopt defendant's view.

In *Sornberger v. Lee,* 14 Neb. 193, it was held: "The receipt and indorsement on a promissory note by the holder of money realized from a collateral left with him by the maker for that purpose will remove the bar of the statute." This case has been cited with approval by this court in the following cases: *Whitney, Clark & Co. v. Chambers, supra; Ashby v. Washburn & Co.,* 23 Neb. 571, and *Moffitt v. Carr, supra.* In the opinion in the last cited case we find the following with reference to *Sornberger v. Lee, supra:* "We have not the slightest doubt of the correctness of that holding; but the decision rests upon the correct principle that the debtor, by delivering to his creditor collateral notes, authorizing him to collect them and indorse the amount of the proceeds on the original note, thereby constituted the holder of the note his agent, and everything that the holder did in the premises was, in effect, the act of the maker of the note. In other words, the transaction amounted to a voluntary payment on the note by the maker." We are unable to detect any difference in principle between the collection of a part of a collateral note and the collection of dividends on stock assigned as collateral. We do not understand the law to require the debtor to have actual knowledge of the exact time and the amount collected from collateral deposited with his

creditor, nor that he needs to positively acquiesce in the indorsement at the time it is made in order to stay the statute. If so, we would have to read into the statute words which are not there. "When any part of the principal or interest shall have been paid" the statute is tolled. This cannot be construed so as to permit a payment made by a volunteer, nor a payment made through the agency of legal proceedings, to have that effect. A partial payment tolls the limitation because of section 22, *supra*, by virtue of which such payment fastens upon the maker an implied renewal promise to pay the indebtedness or an acknowledgment of liability. In *Ebersole v. Omaha National Bank*, 71 Neb. 778, it was held: "A part payment operates to revive a contract debt, barred by the statute of limitations, of its own vigor and not as evidence of an acknowledgment or new promise." The same effect must be given to a payment upon a debt, even though it was not barred at the time of payment. This rule excludes from consideration the idea, if any such exists, that to prevent the running of the statute the maker must have known of, or acquiesced in, the indorsement or payment when made. This being true, it necessarily follows that any payment made through the arrangement of the debtor, or such as is the natural and reasonable sequence of his own agreement, legal proceedings not being invoked, will stay the running of the statute.

In the case at bar, the certificate was assigned to the holder of the note. He, or his legal representatives, collected dividends, as they had the legal right to do, and credited the amount thereof on the note. The maker of the note intended that they should do this. He could not have known the date of payment or the amount of the dividends when he assigned the stock, but he assigned it with an understanding that whenever dividends were paid they would be applied on the note. This was his contract, and, under the statute, was as effectual to stay the limitation as though he had collected the dividends and handed the amount thereof to the creditor. By the assignment of

the stock he, in effect, gave the officers of the corporation authority to pay the dividends to the holder of the certificate of stock—the payee. We cannot see that the surrender of the certificate and the issuance of a new one in lieu thereof to the plaintiffs in any way changes the rights of the parties. The duty of the plaintiffs to restore the collateral security upon the payment of the debt applies to the stock assigned, whether it be evidenced by the new certificate or the old one. The surrender of the old certificate did not change the character of the assignment to the payee of the note.

We recommend that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed November 21, 1907. *Former judgment of affirmance adhered to:*

Limitation of Actions: PAYMENTS. The payment of dividends upon the stock of a corporation assigned to the payee by the maker of a note as collateral security, if paid within the statute of limitations after such assignment, and the application thereof as payments upon the note, will stay the running of the statute of limitations.

GOOD, C.

This case is before us on rehearing. A statement of the facts may be found in the former opinion, *ante,* p. 86. The only question for determination is as to whether or not the payments credited upon the note were such as to arrest the running of the statute of limitations. The payments made were the proceeds of dividends upon corporate stock, which had been pledged as collateral security to the note. The rule is well established in this state, and is quite generally recognized in other states, that any

voluntary payment made by the debtor, or by his authority, will be sufficient to arrest the running of the statute. The vital question, therefore, in this case is: "Were the payments that were credited upon the note voluntary payments? It is generally recognized that any payment made as a result of legal proceedings, or that is made as the result of the operation of law, is not held a voluntary payment. A payment made as the result of the foreclosure of a chattel mortgage is held not to be a voluntary payment. *Westinghouse Co. v. Boyle*, 126 Mich. 677. A payment resulting from the sale of land under a trust deed given to secure the payment of the debt is held not to be a voluntary payment. *Moffitt v. Carr*, 48 Neb. 403. A payment by an assignee for the benefit of creditors is held not to be a voluntary payment. *Whitney, Clark & Co. v. Chambers*, 17 Neb. 90; *Connor v. Becker*, 62 Neb. 856. And the weight of authority is, perhaps, to the effect that a payment upon a note derived from the sale or collection of other notes pledged as collateral to the principal note is not a voluntary payment. But the rule is otherwise in this state. In the case of *Sornberger v. Lee*, 14 Neb. 193, it was held that such a payment was voluntary, and was sufficient to stay the running of the statute of limitations. This opinion has been cited and quoted with approval in the following cases: *Whitney, Clark & Co. v. Chambers, supra; Ashby v. Washburn & Co.*, 23 Neb. 571; and *Moffitt v. Carr, supra*. And it is, and ought to be, considered as the settled rule in this state. Our attention has not been called to, nor have we been able to find, any cases directly in point, and it is doubtful if the precise question involving stock certificates held as collateral, has ever been adjudicated in this country.

In order to properly determine the question as to whether the payment is a voluntary one, it becomes necessary to consider what are the rights and duties of the parties arising out of the pledge of the corporate stock as collateral security. In this case the corporate stock was pledged, and there was a delivery of the stock cer-

tificate with power of attorney in blank to transfer the same on the books of the corporation. The certificate and power of attorney were delivered at the time of the giving of the note. By this act McShane transferred to Bosler the right and power to have the certificate surrendered and a new one issued, and divested himself of the right thereafter to draw any dividends upon the stock, and Bosler became entitled to collect any dividends declared upon the stock while he held it as collateral. It is true that Bosler did not have the stock transferred upon the books of the corporation for a period of about three years, and that McShane during that time collected the dividends. But this did not change the rights of the parties, for Bosler was entitled not only to have the stock transferred upon the books of the corporation, but was entitled to draw the dividends not only from the time of the transfer of the stock on the books of the corporation, but from the time of the delivery of the certificate to him when the stock was pledged as collateral. The fact that the stock had not been transferred upon the books of the corporation was wholly immaterial as to the rights of Bosler to collect the dividends. The rule is thus laid down in 22 Am. & Eng. Ency. Law (2d ed.), 906, 907: "Where stock is pledged in the ordinary mode and the pledgor executes an irrevocable power of attorney, authorizing a transfer of the shares of stock on the books of the corporation, the pledgee has the right to cause a proper transfer of the stock to be made to him. * * * Where corporate stock is pledged, and there is a delivery of the stock with a power of attorney in blank to transfer on the books, and an assignment in blank on the back of the certificate, the pledgee has the right to receive from the corporation any dividends accruing while he holds the stock. It is not only the right but the duty of the pledgee of the stock to collect such dividends; and the fact that no transfer has been made on the books of the company is immaterial." McShane did all that was in his power to do to transfer the stock when he delivered the certificate of stock with a

power of attorney in blank to Bosler. Then and there McShane's right to the dividends ceased, and Bosler's commenced. This right to the dividends was the result of the voluntary act of McShane. While Bosler had the right to the dividends, he also owed a duty to McShane and was under obligation to him to apply the dividends so received as payments upon McShane's note. The only right to retain the dividends was as payments upon the note to which the corporate stock had been pledged as collateral. It was Bosler's duty, therefore, to credit the dividends received upon the note as part payments thereof. It was to the interest of McShane that Bosler should collect the dividends and apply them in part payment of the note. Counsel for appellant contends that Bosler acted against the interest of McShane when he had the stock transferred upon the books of the corporation and thereafter collected the dividends, and that, therefore, the proceeding was adversary in its nature and the payments not voluntary. The vice of this argument lies in the fact that he assumes that McShane was deprived of the right to the dividends by the transfer of the stock upon the books of the corporation. While it was, doubtless, the intention of the parties, at the time of the giving of the note and the pledging of the stock as collateral thereto, that the stock would be immediately transferred upon the books of the corporation to Bosler, yet, as we have seen, the right of Bosler to the dividends did not depend, at least as between him and McShane, upon the transfer of the stock upon the books of the corporation, but it depended upon the voluntary act of McShane in delivering to Bosler the certificate with the assignment and power of attorney indorsed thereon. McShane was not deprived of any right to collect the dividends by the transfer of the corporate stock upon the books, for the reason that his right to those dividends had ceased by his previous act. The dividends that McShane collected after he pledged the stock were wrongfully received by him. We have no doubt that, had McShane abstained from receiving and collecting the divi-

dends from the stock, as it was his duty to do, and, if Bosler had neglected to collect the dividends and apply them upon McShane's note, and the dividends, through the failure of the corporation or otherwise, had been lost, Bosler would have been liable for such loss. Only the rights of third parties could have been affected by the transfer of the corporate stock upon the books. The object of such transfer is that the corporation and third parties may be advised as to who has the right to control the stock and to collect the dividends thereon. As far as McShane was concerned, and as between him and Bosler, the transfer was complete at the time of the pledging of the stock and the delivery of the certificate. It, therefore, became the duty of Bosler, and of his executors, who succeeded to his rights, to receive the dividends and credit them upon the note, and in so doing they acted in the interest of McShane, and as his agent and in pursuance of his voluntary act. The payments were, therefore, voluntary and operated to arrest the running of the statute of limitations.

It is clear to us that the conclusion reached on the former hearing is the correct one, and that the judgment of the district court should be affirmed. However, we are of the opinion that the rule was too broadly stated in the first paragraph of the syllabus in the former opinion and that it was going too far to say that "any payment upon a written contract for the payment of money made through the arrangement of the maker, or such payment as is the natural and reasonable sequence of his agreement, will stay the running of the statute of limitations." The statement of law as therein enunciated might reasonably be construed as covering a case where the money was derived from the operation of law. The first paragraph of the syllabus in the former opinion is, therefore, disapproved. For the reasons stated, we recommend that the former decision be adhered to, but that the first paragraph of the syllabus in the former opinion be disapproved.

EPPERSON, C., concurs.

By the Court: For the reasons given in the foregoing opinion, the former judgment is adhered to.

AFFIRMED.

SEDGWICK, C. J., concurring.

It seems to me that the former decisions of this court upon the question involved are not reconcilable. In *Sornberger v. Lee,* 14 Neb. 193, the law is stated to be: "The receipt and indorsement on a promissory note by the holder of money realized from a collateral left with him by the maker for that purpose will remove the bar of the statute." It will be noticed that this makes no distinction between negotiable and nonnegotiable collaterals; and in *Moffitt v. Carr,* 48 Neb. 403, the foregoing syllabus is quoted and appears to be approved. *Moffitt v. Carr* holds that money realized from the proceeds of a sale of land under a trust deed, given to secure the claim, is not such payment as will stop the running of the statute, and the opinion says: "We have not the slightest doubt of the correctness of that holding" (in *Sornberger v. Lee*). The reason given for the distinction between the two cases is that, in turning over the collaterals as security, the debtor makes the creditor his agent to collect the collaterals and apply them upon the principal debt, so that the action of the creditor in so doing is also the act of the maker of the note. The better rule undoubtedly is that the collection of the collateral securities and the application of the proceeds by the creditor upon his claim will not stop the running of the statute. After the debtor has transferred the collaterals he may pay the principal claim. The statute of limitations presumes that he has done so, and the fact that the creditor has collected the collaterals and applied the proceeds on the principal claim is no proof as against the debtor that the claim had not been paid in full after the collaterals were turned over to the creditor and before the payment was made on the collaterals.

This is in accordance with the weight of authority.   There are cases that hold the same principle as is held in *Sornberger v. Lee*, but the ground of the holding always is that, in transferring the collaterals, the debtor transfers the property itself, and the collection and application of the money on the collaterals is referred to the act of the debtor in transferring the collaterals and so made his act. These cases generally hold that the application of the money upon the principal claim must be within the time of the statute of limitations after the assignment of the collaterals; that is, payments made by the proceeds of the collaterals are considered as made, so far as the debtor is concerned, at the time the debtor consents to the application of such proceeds upon the principal claim, which he does by the assignment of the collaterals for that purpose.   If, therefore, sufficient time elapses for the running of the statute from the assignment of the collaterals to the application of the proceeds thereof upon the principal claim, such application of the proceeds will not remove the bar of the statute.   In the opinion of the court this rule will most nearly harmonize the decisions of this court.   By assigning collaterals to secure the principal claim, the debtor assigns the property itself represented by the collaterals, and, if the proceeds of such collaterals are applied upon the principal claim within the statute of limitations after such assignment, it will be a payment as of the time of the assignment of the collaterals, and will interrupt the running of the statute at that time, so that action may be maintained on the claim within the statute of limitations after the assignment of the collaterals.   This rule of law justifies the conclusion reached in the opinion.