IN RE ESTATE OF ERNST ZEHNER.
JASPER LAWRENCE, APPELLANT, V. ARMOND M. CLARK, ADMINISTRATOR, APPELLEE.

FILED FEBRUARY 17, 1933. No. 28360.

*Mothersead & York,* for appellant.

*Wright & Wright, Max G. Towle* and *A. F. Young, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and PAINE, JJ., and RAPER, District Judge.

PAINE, J.

This is an appeal from a ruling of the district court disallowing a claim filed against the estate of Ernst Zehner upon a promissory note for $5,000, which had been indorsed and sold by Ernst Zehner. The only issue

in the case is whether or not the claim is barred by the five-year statute of limitations.

Byron E. Yoder made and delivered a note for $5,000 to Ernst Zehner, dated at Melbeta, Nebraska, June 5, 1918, and payable at the State Bank of Melbeta one year after date, with interest at 8 per cent., both principal and interest to bear 10 per cent. interest after maturity. The original note appears in the bill of exceptions, and bears seven· indorsements of payments between the dates of June 10, 1919, and November 28, 1922, the total amount of said payments being $2,645.65. After the indorsement upon November 28, 1922, under a rubber stamp printing the words, "Demand, notice and protest waived," appears the signature of Ernst Zehner, and immediately thereunder appears two indorsements of payments, as follows: June 6, 1923, paid $210.10; December 29, 1925, paid $556.58. By the indorsement on the back of said note, it was sold to Jasper Lawrence, and upon the death of Ernst Zehner administration of his estate was begun in the county court of Scotts Bluff county, and upon December 26, 1930, Jasper Lawrence filed the note attached to a claim bill against the estate of Ernst Zehner, which claim was allowed by the county judge upon September 22, 1931, for balance due of $5,203.28, with interest at 8 per cent., as shown on the back of the claim bill.

The administrator appealed from this finding to the district court, and on trial of the same issues the district court found in favor of the administrator, and disallowed the claim against the estate, and motion for a new trial being overruled, the claimant, Jasper Lawrence, appeals to this court, and sets out four assignments of error: First, that the judgment is not supported by the evidence; second, that it is contrary to law; third, that the court erred in finding and determining that the claim of Jasper Lawrence is barred by the five-year statute of limitations of the state of Nebraska; and, fourth, that the court erred in overruling claimant's motion for a new trial.

The bill of exceptions, consisting of over 100 pages, discloses that, at the time of giving this note, the maker of it was the cashier of the State Bank of Melbeta, and that on May 10, 1920, Cashier Yoder sold his stock in said bank to Charles F. Lyman, and at the same time G. M. Crabill, who had been president of said bank for many years, also joined in the sale of some of his stock, and later on, to wit, upon February 11, 1922, a guarantee of the principal and interest of ten notes listed therein was given by Crabill and Yoder to Charles F. Lyman, the purchaser of the bank stock. In said agreement Crabill and Yoder agreed that if any of the notes remain unpaid on January 1, 1923, they would take them up or give a new guarantee.

Charles F. Lyman testified that he organized the State Bank of Melbeta in 1913, and sold out his interest in 1918 to Crabill and Yoder, and in 1920 bought all of Mr. Yoder's stock and most of Mr. Crabill's stock, and that when Mr. Yoder ceased to be cashier he was succeeded by John T. Swan, who was the active and managing officer of the bank. He had been acquainted with Ernst Zehner for many years quite intimately, and testified that he was a German, who was not able to read much English, and depended upon other people entirely to keep his accounts, and consulted with Mr. Lyman frequently. When money was collected on the ten notes listed in the written guarantee, the money was to be deposited to the account of Crabill and Yoder and held by the bank to make good Yoder and Crabill's guarantee to Lyman, and that, when Yoder and Crabill's guarantee had been entirely satisfied, then any money remaining in such bank account was to be distributed between Yoder and Crabill. When Ernst Zehner learned of the guarantee of notes signed by Yoder, he became worried about the possibility of collecting his Yoder note, and made complaint to Swan, the cashier, and Lyman, the president, and the claim is made that they got an agreement from Yoder that the State Bank of Melbeta should apply Yoder's part of any money in that

account, after their guarantee to Lyman had been satisfied, upon the Yoder note to Zehner. This written agreement could never be found, and Yoder, on the other hand, positively denied ever making any such agreement, and said no accounting was ever had in regard to the notes paid, and that he did not designate any one as his agent to make the payment of $556.58 upon December 29, 1925, being the last indorsement on said note, and that he knew nothing whatever about any payments that were made on this note after he left the bank in 1920. He testifies positively that the $5,000 note he had given to Zehner was never guaranteed by him in any way in any of these agreements with the bank, and that it was never in the bank while he was there, and that it was an entirely separate transaction between him and Zehner, and upon cross-examination he testified that he never knew that Zehner had sold the note to Jasper Lawrence, and that there was no understanding that any excess should be applied on the Zehner note, and that, if Mr. Crabill so testified, it should be remembered that Mr. Crabill and Mr. Lawrence were very good friends, being brought up in the same county from boyhood. Yoder further testified that he was at Lincoln, and absolutely irresponsible as far as financial obligations were concerned, having been cleaned out by the guarantee given in the sale of his bank stock. Yoder testified that he expected to have an accounting from Swan or Crabill, but that he never heard from them, nor wrote to them, and insisted, on redirect examination, that the payments made upon the note after he left in 1920 were not made with his consent or knowledge. In regard to the disputed indorsement made upon the note on December 29, 1925, it appears that there was $1,113.16 in the Crabill and Yoder account, as shown by the original loose-leaf ledger sheet attached, which arose as follows: There had been a small balance of $5.75 carried in the account for months, and upon December 29, 1925, two deposits were made in said account, one of $1,000, which Crabill had borrowed out of the account

on October 20, 1924, and replaced upon this particular day, and one of $107.41, and upon the same day the original deposit slips show that half of this amount of $1,113.16 was deposited to Jasper Lawrence's account, who owned this note, and half of it was put back in the account of G. M. Crabill, the deposit slips being initialed by Cashier Swan. The $107.41 came from a payment of J. S. Bracken, which was paid Crabill May 21, 1925, on instalments due on a house purchased, of $200 less certain interest and abstract fees and expenses paid out by Mr. Crabill, leaving a balance of $107.41, which it is claimed was a payment upon the Mary B. Dean note, which had been guaranteed in the written guarantee of February 11, 1922, and at the same time that Mr. Swan deposited $556.58 to the account of Jasper Lawrence he indorsed this payment upon the Yoder note. During the time of all of these transactions, Mr. Crabill was president of the State Bank of Melbeta.

In *Sornberger v. Lee,* 14 Neb. 193, the indorsement of $61.55, made January 30, 1877, was a collection upon a note left with them as collateral security for the note upon which it was indorsed. In this case the creditor did just what it was his duty to do in making the indorsement.

In *Bosler v. McShane,* 78 Neb. 86, being the second case cited by appellant, dividends paid on corporation stock deposited with the note were credited as payments thereon, and without such credit the note would have been barred. It clearly appears that such stock deposited by maker was collateral to the note, and the crediting of such dividends within the instructions of the maker.

But when this case was before the court on rehearing (78 Neb. 91) Judge Good, then commissioner, in adhering to the first opinion, set out that the rule is well established in this state that any voluntary payment by the debtor arrests the running of the statute, and states that the vital question in all these cases is: "Were the payments that were credited upon the note voluntary pay-

ments?" He adds that payments made as the result of legal proceedings, or made as the result of operation of law, are not held to be voluntary payments, and adds that it was going too far to state, in the first paragraph of the syllabus: "Any payment upon a written contract for the payment of money made through the arrangement of the maker, or such payment as is the natural and reasonable sequence of his agreement, will stay the running of the statute of limitations;" as it might be construed to cover a case where the money was derived from the operation of law. See *Mizer v. Emigh,* 63 Neb. 245.

In *Dwire v. Gentry,* 95 Neb. 150, Judge Letton discussed the case of *Mayberry v. Willoughby,* 5 Neb. 368, and says that a promise by one joint debtor will not take a case out of the statute of limitations as to his cocontractors unless he is specially and severally authorized for that purpose, and that, when the time limited by it has expired, then in legal contemplation the debt is extinguished, and can only be revived by a new promise by the person sought to be charged, or by some person lawfully authorized by him for that purpose.

In *Borden v. Fletcher's Estate,* 131 Mich. 220, it is said: "It is only when authority is given to one to make a payment on behalf of another that such payment can bind a cocontractor of him who makes the payment."

In 1781 it was held in England by Lord Mansfield, in *Whitcomb v. Whiting,* 2 Doug. K. B. 652, that a payment by one joint debtor was effectual to take the case out of the statute of limitations as to his co-obligors, for it was said that an admission by one is an admission by all, but the majority of states have repudiated this doctrine, and Nebraska is in line with the others in its recent opinions, such as *Dwire v. Gentry, supra,* and *Hall v. Rogers,* 113 Neb. 290.

In 10 Neb. Law Bulletin, 410, there is a discussion of the evolution of this theory in Nebraska, citing several cases. In *Hall v. Rogers, supra,* the first syllabus holds the same as *Dwire v. Gentry,* and the second syllabus is:

"A payment by one of several joint debtors on a note, without the authority or consent of the others, will not toll the statute of limitations as to them."

"Statutes of limitation are treated as statutes of repose, and are considered necessary to the welfare of society. Since the lapse of time carries away with it the means of proof, such statutes are deemed to be in the interest of morals, serving to prevent perjuries, frauds, and mistakes, and to render people attentive to the early adjustment of demands, and prevent the disturbance of settlements which have been made, but of which the proof may have been lost." 17 R. C. L. 671, sec. 9.

As set out herein, Crabill received $1,000 on October 20, 1924, and $107.41 May 21, 1925, and kept both of these sums until December 29, 1925, when he arranged to redeposit them to make a payment on this note of $556.58. The last payment on this note, in any event, was received and should have been made upon this note upon May 21, 1925, and the statute of limitations commenced to run on that date, and more than five years had elapsed when this note was filed as a claim against this estate on December 26, 1930. These sums were not paid on the note with reasonable promptness.

There is nothing in this record from which an inference can be drawn that he was authorized to hold this money for months and then make a payment that would prevent the statute of limitations running as against the Zehner estate. 13 Am. & Eng. Ency. Law, 750; *Sweet v. Ellis*, 109 Mich. 460; 17 R. C. L. 935; 37 C. J. 1162; *Scott v. DeGraw*, 90 Neb. 274; *Moffitt v. Carr*, 48 Neb. 403.

The district court found generally for the administrator of the estate of Ernst Zehner, and against the claimant, Jasper Lawrence, and found that the statute of limitations had run against the claim of Jasper Lawrence prior to the filing of his claim in the county court, and ordered and decreed that said claim be disallowed. Finding no error in the judgment of the district court, the same is hereby

AFFIRMED.