T. F. STROUD, APPELLEE, V. G. H. PAYNE ET AL., APPELLANTS.

FILED MARCH 28, 1933. No. 28395.

*Patrick & Smith* and *Warren Howard*, for appellants.

*Shotwell, Monsky, Grodinsky & Vance, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

This is an action on a promissory note, brought by the payee against the five makers thereof. One of the defendants was eliminated because of his discharge in bankruptcy proceedings. Plaintiff recovered judgment against the other four defendants, and they have appealed.

In their answer defendants admitted the execution of the note, and, as defenses, alleged that it was given with-

out consideration, solely for accommodation of plaintiff, and also pleaded the statute of limitations.

The record discloses that plaintiff and defendants were stockholders and directors of the Albert Lea Farms Company (hereinafter referred to as the farms company). The farms company owned, and sought by drainage to reclaim, a large tract of swamp land in Minnesota. The farms company required more funds with which to carry on its operations and borrowed a large sum from an Omaha bank. Later the bank was unwilling to continue the credit or advance further funds to the farms company. Prior to this the farms company caused $150,000 par value of its preferred stock to be issued to defendant Payne as trustee, for which he gave his note to the farms company. This was done apparently for the purpose of showing that this additional amount of preferred stock was outstanding, and Payne was holding the stock for the purpose of sale for the company. Payne sold to others $36,500 of this stock which he held as trustee. Later he transferred the remaining $113,500 of this stock to the plaintiff as trustee, and at that time plaintiff, defendants and another stockholder and director of the farms company, in their individual names, borrowed $113,500 from the Omaha bank, and pledged as collateral security therefor $113,500 of stock held in the name of plaintiff as trustee. The money so obtained went into the treasury of the farms company. When this note matured it was renewed by all the makers save one who had died.

When the renewal note was about to mature, the bank refused to further renew the note, and insisted that it should be paid and taken up. The farms company was in urgent need of the money, and thereupon an arrangement was made whereby plaintiff, in his individual name, borrowed from the bank $113,500, and pledged collateral of his own to secure his note. At the same time, plaintiff contends, before he would enter into this arrangement to borrow the money, he insisted upon indemnity, and to

indemnify him the defendants gave to him their note for $113,500, the note reciting that it was secured by $113,-500 face value of the preferred stock of the farms company. When this note matured, it was renewed, on August 14, 1924, for $113,500, and this note recites on its face: "$113,500 Pref. Stock Albert Lea Farms Co. Deposited as Collateral."

Defendants contend that, when the $113,500 of preferred stock was transferred from Payne to plaintiff as trustee, he purchased it outright, and that the note, given to the bank, for $113,500, which was signed by plaintiff and defendants, was to enable him to procure the money with which to pay for his stock. After plaintiff took the stock as trustee, $15,000 par value thereof was sold, and the proceeds were credited upon the note given by defendants to plaintiff. The indorsements upon the note for this sum were October 3, 1924, $5,000; November 10, 1924, $10,000. It is conceded that the farms company has paid all the interest upon this note and on the note of which it is a renewal. The following interest payments, with their respective dates, have been made upon the note in controversy out of the funds of the farms company, to wit, August 17, 1925, $3,486.30; February 17, 1926, $3,020.64; February 20, 1926, $426.86; August 13, 1926, $3,447.50. The present action was begun within five years from the date of the last indorsement, but more than five years after the due date of the note.

We will first consider the question as to whether the note was without consideration and given for the accommodation of the plaintiff. It may be observed that some of the defendants frankly admit that this note was regarded as an obligation of the farms company. There is evidence tending to prove that, in order to take up and cancel the note on which all the defendants and plaintiff were liable to the bank, and which the bank was pressing for payment, defendants executed to plaintiff their note for $113,500, and plaintiff gave to the bank his note, secured by his individual collateral for a like amount, and

thereby the note on which defendants were liable was taken up and canceled. The evidence warranted the jury in finding that the defendants secured their release from a pressing obligation by the execution of their first note to plaintiff, and that there was a valid consideration therefor. If there was a valid consideration for that note, of course it extended to the renewal of the note.

A more serious question is the plea of the statute of limitations. The question is whether the last payment of interest, to wit, August 13, 1926, is sufficient to toll the running of the statute.

There is evidence from which an inference may be drawn that defendants arranged with the plaintiff for the payments of interest by the farms company, and that they knew such payments were being so made. They were directors of the farms company and, as such, are chargeable with notice of the business transactions of that company. *Merchants Bank v. Rudolf*, 5 Neb. 527.

Defendants further contend that, since the payments of interest were made by the farms company and not out of their individual funds, and since the plaintiff alleged such payments to have been made by the defendants, there was a total failure of proof in that respect, and that the court erred in receiving in evidence the note on which the suit is based. They contend that the interest payments were made by a third party, without their direct authority, and that such payments are insufficient to arrest the running of the statute of limitations. They also contend that, since there is no written agreement by which the farms company was to pay the interest, parol evidence thereof was inadmissible; and further contend that, since the farms company was not bound by any written contract to pay the interest, the oral contract was to answer for the debt of another and was void under the statute of frauds.

It will be observed that this is not a suit against the farms company to collect interest or principal, and the question of the statute of frauds is not involved; nor does

parol evidence that the farms company was to pay the interest contradict or vary the terms of the written instrument. It did not relieve the defendants of the obligation to pay the interest. The situation is not unlike that where one whose interest obligation is due, or to become due, refers his creditor to his banker, who, he says, will advance the interest for him. Of course, the banker, unless some other arrangement is made, is not required to advance the interest, but, if he does so, the advancement is made on behalf of the individual. So, in this instance, if the defendants had arranged with the farms company to pay the interest upon the note in controversy, while the farms company, in the absence of some agreement binding it, would not be liable, still, if the farms company paid it, it was for the benefit of the defendants and at their instance, and such payment inured to their benefit and was, in effect, made by them.

In 4 Jones, Commentaries on Evidence (2d ed.) sec. 1644, it is said: "There are certain matters which, of necessity, rest in parol, and which unquestionably permit of proof by extrinsic evidence. For example, the fact of payment or release of a negotiable instrument may be established by parol. It may also be shown, as between the original parties, that a note has been discharged by the performance of an oral agreement. * * * Nor is it any violation of the 'parol evidence' rule to show by extrinsic evidence an entirely distinct and collateral contract; or to show that the instrument was given in satisfaction of a former note, or as security therefor."

In *Rugland v. Thompson,* 48 Minn. 539, it was held: "The payee and holder of a promissory note having accepted from the maker certain personal property and services, proof is admissible that it was orally agreed, when the note was made, that whatever should be thus supplied to the payee should be applied in payment on the note; such evidence being admissible, not to vary the agreement expressed in the note, but only as bearing upon and characterizing the subsequent delivery and acceptance of the property and services."

We are satisfied that the court did not err in receiving the note in evidence, and that the parol evidence was admissible to show the contemporaneous oral agreement as to the payment of interest by the farms company.

In 37 C. J. 1160, speaking of part payment tolling the statute of limitations, it is said: Payment "may be made by one expressly authorized to make it, * * * by a stranger who makes it at the request and in the presence and with the consent of the debtor, by the creditor pursuant to the direction and authority of the debtor, or by one whose unauthorized act is afterward approved and ratified by the debtor." And in the same volume, at page 1164, it is said: "But where the payment is made by the one to whom the creditor has been referred for payment by the other, or upon request of, by direction of, or under an express agreement with, the other, or with the knowledge and consent or subsequent ratification of the other, or as his tacit agent, it will toll the statute as to the other."

In 17 R. C. L. 924, sec. 287, it is said: "Part payment, within the meaning of a statute which does not say by whom, nor under what circumstances, a payment must have been made in order to arrest the running of the statute, or independent of any statutory provision, must be made voluntarily either by the debtor sought to be charged with the effect of it, or in pursuance of his consent or direction."

In *Brockman v. Ostdiek*, 79 Neb. 843, it is held: "What may be received in payment of a debt is a matter of contract between the interested parties, with which, in the absence of fraud or mistake, the courts will not interfere." The question under consideration was whether a partial payment made by one, other than the maker of a promissory note, would toll the statute of limitations. In the opinion it is said (p. 844): "It appears that the defendant was a partner in a firm engaged in the mercantile business, to which firm the plaintiff was indebted for merchandise. The defendant's partner was urging

payment of the account, and the plaintiff appealed to the defendant to adjust this item of indebtedness for him. Both agree that the defendant consented to do so." The court held that the question was one of fact, and that the evidence was sufficient to show that the payment was made by authority of the defendant, and operated to toll the statute. This court has held, and we think it is the general rule, that any voluntary payment made upon a contract by the debtor or by his authority will be sufficient to arrest the running of the statute of limitations. *Bosler v. McShane*, 78 Neb. 86, 91.

There is evidence also in the record that at the time the last interest payment was made, which is relied on to arrest the running of the statute, all of the defendants were present, the interest payment was discussed, and a check was drawn on the account of the farms company, in the presence of all, and delivered to the plaintiff in payment of the interest. The question as to whether the payment was authorized by defendants was one of fact, concerning which the evidence was in conflict. It was the province of the jury, and not of this court, to determine that question.

Defendants also complain that certain evidence was admitted that was competent as to defendant Payne but not as to the other defendants, and that this evidence should not have been received, or, if so received, the jury should have been instructed to consider it only in considering the liability of Payne. There is nothing in the record to show that defendants requested the court, either at the time the evidence was received or at any other time, to instruct the jury with reference to its effect. The court could not exclude the evidence, because it was competent as to one of the defendants, and, had the court been requested so to do, it no doubt would have specifically directed the jury to consider it only as to the defendant Payne. Failure of defendants to make such request is a waiver of their right to have had such instruction

given to the jury. *Carleton v. State*, 43 Neb. 373; *Chicago, R. I. & P. R. Co. v. Holmes*, 68 Neb. 826.

Complaint is made of the conduct of counsel for plaintiff. It appears that during the progress of the trial there were a number of unseemly wrangles between counsel which should have received the rebuke of the court. We find nothing, however, in the remarks, of which complaint is made, that was prejudicial to the rights of the defendants.

Counsel also suggest in their reply brief that, in any event, the obligation was that of all the defendants and the plaintiff jointly, and that plaintiff should have had judgment for only a *pro rata* portion of the obligation. No such issue was raised in the trial court. It may not be presented for the first time in this court.

No error prejudicial to defendants has been found.

JUDGMENT AFFIRMED.