CLEARWATER ELEVATOR COMPANY, APPELLANT, V. MARY
HALES ET AL., APPELLEES.

94 N. W. 2d 7

Filed January 9, 1959.  No. 34464.

*Harold Rice, Frederick M. Deutsch,* and *William I. Hagan,* for appellant.

*Thomas E. Brogan,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought in the district court for Antelope County by the Clearwater Elevator Company, a corporation, plaintiff, against Mary Hales and Maude M. Brion, also known as Maud M. Brion, defendants, to foreclose a subcontractor's lien on real estate owned and occupied by the defendants for the furnishing of materials relating to the erection of a duplex residence. The defendants moved for a summary judgment. The trial court sustained the motion of the defendants for summary judgment and removed the lien on said real estate, dismissed the plaintiff's action, and taxed the costs to the plaintiff. The plaintiff filed a motion for new trial and a supplemental motion for new trial, both of which

were overruled. From the overruling of the plaintiff's motion for new trial and supplemental motion for new trial, the plaintiff appeals.

The plaintiff's petition, in substance, alleged that it is a corporation organized under the laws of Nebraska with its principal place of business in Clearwater, Antelope County; that at a date unknown to plaintiff but prior to October 1, 1955, the plaintiff was informed and believed that Arnold V. Middleton entered into a contract with the defendants for the erection of a dwelling house on Lot 1 and the east half of the vacated alley lying between Lots 1 and 12, Block 174, in the city of Neligh, said real estate being owned by the defendants; that prior to October 10, 1955, plaintiff and Arnold V. Middleton entered into an oral agreement whereby plaintiff would furnish certain building materials for the erection of the dwelling house on the real estate above described for the defendants; that in compliance with said oral agreement the plaintiff furnished certain building materials for the erection of the dwelling house in the total amount of $8,542.49, said material having been furnished between October 10, 1955, and May 21, 1956; that between the dates of October 14, 1955, and April 9, 1956, the plaintiff received payments on said account and gave credit for materials returned, such payments and credits being in the amount of $5,706.66, leaving a balance due plaintiff of $2,835.83; and that on or about July 3, 1956, plaintiff, within 60 days after the last item of said material had been furnished, filed in the office of the county clerk of Antelope County a subcontractor's lien on the above-described premises for the full amount of the account, stating that plaintiff had and claimed a lien on said premises. The plaintiff, after giving credit for $48.96 for materials returned after the lien was filed, prayed for judgment against the defendants for the sum of $2,786.87, with interest at the rate of 6 percent per annum from May 21, 1956, for a decree adjudging the same to be a first lien upon the said premises, for an

order directing sale of the said premises for the satisfaction of said lien and the application of the proceeds thereof to the payment of the plaintiff's lien, and for costs expended.

The defendants' motion for summary judgment against the plaintiff was in substance as follows: That the plaintiff was a subcontractor for Arnold V. Middleton; that as such subcontractor, under section 52-102, R. S. Supp., 1955, the subcontractor's lien must be filed with the register of deeds within 60 days from the furnishing of such material; and that the subcontractor's lien of the plaintiff was not filed within the time provided for by the statute.

In support of their motion for a summary judgment, the defendants introduced written admissions and answers of the plaintiff to certain interrogatories, affidavits of parties, and the filing of the mechanic's lien of record in Antelope County.

For a determination of this appeal we consider only the following assignment of error. The plaintiff assigns as error that the trial court erred in sustaining the defendants' motion for a summary judgment.

There are well-established rules that relate to the summary judgment act. The prerequisites of granting a summary judgment are that the movant establish that there is no genuine issue of fact in the case and that he is entitled to judgment as a matter of law. See Spidel Farm Supply, Inc. v. Line, 165 Neb. 664, 86 N. W. 2d 789. See, also, Eden v. Klaas, 165 Neb. 323, 85 N. W. 2d 643.

In Healy v. Metropolitan Utilities Dist., 158 Neb. 151, 62 N. W. 2d 543, this court said: "In considering a motion for summary judgment the court should view the evidence in the light most favorable to the party against whom it is directed. * * * The court examines the evidence on motion for summary judgment, not to decide any issue of fact presented, but to discover if any real issue of fact exists. If there is a genuine issue

of fact to be determined, a summary judgment may not be properly entered."

The reason advanced by the defendants for sustaining the defendants' motion for a summary judgment was that the mechanic's lien of the plaintiff was not filed within the time contemplated by the statutes.

Section 52-101, R. S. Supp., 1955, provides in part: "Any person who shall * * * furnish any material, * * * (1) for the construction, erection, * * * of any house, * * * or appurtenance, (2) for grading, filling in, excavating, leveling, clearing, grubbing, furnishing, and placing soil or sod, (3) for furnishing and planting trees, shrubs, or plant materials, * * * shall have a lien to secure the payment of the same upon such house, * * * or appurtenance and the lot of land upon which the same shall stand or the work is performed; * * *."

Section 52-102, R. S. Supp., 1955, provides in part: "Any * * * subcontractor who shall * * * furnish any material * * * for any of the purposes mentioned in section 52-101, to the contractor, or any subcontractor who shall desire to secure a lien upon any of the structures mentioned in said section, may file a sworn statement of the amount due him from such contractor for such * * * material, * * * together with a description of the land upon which the same was * * * used, within sixty days from * * * furnishing such material * * * with the register of deeds of the county wherein said land is situated. If the contractor does not pay such * * * subcontractor for the same, such subcontractor * * * shall have a lien for the amount due for such * * * material, * * * on such lot or lots and the improvements thereon from the same time and in the same manner as such original contractor; * * *."

The plaintiff is in accord with the authorities cited by the defendants to the effect that if the last item or items were not furnished in the prosecution of the contract by the contractor, but are unrelated items or items furnished pursuant to an independent contract or pur-

chase, the time for filing the mechanic's lien by a subcontractor will not be extended. Also, if the last item is not furnished in the prosecution of the original contract by the contractor but for the purpose of reviving or extending the time for filing the lien, then those items may not be considered.

In Coates Lumber & Coal Co. v. Klaas, 102 Neb. 660, 168 N. W. 647, this court held: "The subcontractor's right to a lien for services or material furnished to the contractor does not depend upon the terms of the contract entered into between the owner and the contractor."

The record discloses that J. A. Middleton is the president of the plaintiff corporation. Robert Middleton is one of his sons and the secretary and treasurer of the plaintiff corporation. Alta Middleton, wife of J. A. Middleton, is vice president of the corporation. Arnold V. Middleton is a son of J. A. Middleton, and owns one share of stock in the corporation, but is in the business of contracting for the construction of buildings and dwellings, separate and apart from any of the corporation business. On September 27, 1955, the defendants contracted with Arnold V. Middleton to construct a residence duplex for them in Neligh, for which they were to pay the sum of $15,690. The written agreement was prepared by a daughter of one of the defendants. This contract provided in substance, insofar as necessary to consider here, that it was a contract for material and labor necessary and required in the completion of a one-story residence for Mrs. Leonard Hales and Mrs. Maude M. Brion, to be constructed on the property described in the contract. The contract was to cover all labor and material in place, required for the construction of the residence, according to the plans, specification sheet, and typewritten list of all alterations and additions attached to the contract, including two stone planters in front of the picture windows. The contractor was to excavate for all footings, dig all ditches for the laying of sewer, water, and gas connections, *and do all the final*

*grading and seeding.* The terms of payment were set out in the contract. The contractor was to furnish all material and labor necessary for the proper and complete execution of everything described. Final completion date for the contract was January 1, 1956.

The construction of the duplex commenced in the first week or 10 days of October 1955. The defendant, Mrs. Hales, moved into the duplex on February 17, 1956. Mrs. Brion moved into the duplex on February 21, 1956. There is in evidence a check dated February 23, 1956, made to the contractor, signed by Mrs. Hales, and a check dated March 9, 1956, to the contractor, signed by Mrs. Brion. The first-above check was in the amount of $1,000, and the second check was for $1,513.70. Both of the above checks were issued subsequent to the date the defendants occupied the duplex, and designated as final payments under the terms of the contract.

The plaintiff claimed no interest as being a party to the construction of the duplex.

The plaintiff did not include the subcontractor's lien in its pleadings, nor was it offered in evidence at the time of the hearing. The mechanic's lien was filed of record in Antelope County on July 3, 1956, and was not made a part of the record in this case until the plaintiff filed its supplemental motion for new trial.

Pertinent parts of the deposition of the contractor received in evidence may be summarized as follows: He was engaged in the contracting business during the period from September 1955 to January 1956. He contracted to build a residence property in Neligh for the defendants, by written contract, and had personal supervision of the construction of the duplex. He obtained most of the lumber used in the construction of the duplex from the plaintiff corporation. The material furnished by the plaintiff was billed to Arnold V. Middleton as an individual, or the A. V. Middleton Construction Company. The material purchased by Arnold V. Middleton was his obligation under the terms of the

contract and his responsibility. The "Weld Crete," for which a charge was made on May 21, 1956, and which was delivered about the middle of May, is a material used to join new concrete to old concrete. This material was used on the driveway where it was joined to the curb. This was about the time the driveway was being put in, and about that time the contractor got 64 sacks of cement from the plaintiff to pour the sidewalks. He used the same for that purpose, for the driveway, and for footings for planter boxes. The contractor went to the plaintiff's place of business to get this cement and picked it up by truck sometime during the middle of the month of May 1956. There is no charge made for the 64 sacks of cement in the itemized statement which is made a part of and attached to the mechanic's lien. It was either an oversight, if it was obtained, or it never was obtained. The contractor further testified that on May 7, 1956, there was a charge for 5 pounds of blue-grass seed which was used for seeding the lawn. The contractor was required to seed the lawn under the terms of the contract. He further testified that he laid the driveway, which was a complete driveway from the garage to the street. This had nothing to do with the occupancy of the house, but was a part of the contract. He further testified that "Leptyne" is a thinner used in paint. On April 23, 1956, 3 sacks of white cement were used for the planter boxes in front of the house which were tied into the house. He was obligated to do the work, as provided for by the contract.

The affidavit of the defendants stated in substance that on September 27, 1955, the defendants entered into a contract with the contractor for the construction of a one-story residence in the city of Neligh; and that the contract provided that the contractor was to provide all materials and entirely construct said premises. The defendants' affidavit further states that the contract specifically provided that final completion date was to be January 1, 1956; that neither of the said affiants paid

the final sums until the residence was completed; that affiant Maude M. Brion moved into her portion of the residence on February 21, 1956, and affiant Mary Hales moved into her portion of the residence on February 17, 1956; that together they occupied the entire residence; and that construction was substantially completed by January 1, 1956, and entirely completed prior to the time they moved in to occupy said residence.

. The itemized account attached to the subcontractor's lien discloses that materials were furnished by the plaintiff in October, November, and December 1955, and January, February, March, and until April 23, 1956. Then on May 7 there was a charge for 1 gallon of Leptyne and 5 pounds of bluegrass, and on May 21, a charge for 1 quart of Weld Crete, making a total of $8,542.49, less credit of $5,706.66, leaving a balance of $2,835.83, for which amount the plaintiff claims a mechanic's lien.

The contract provides that the contractor is to excavate for all footings, dig all ditches for the laying of sewer, water, and gas connections, *and is to do all final grading and seeding.*

Section 52-101, R. S. Supp., 1955, incorporates in said section the word "appurtenance."

Webster's New Twentieth Century Dictionary (2d Ed.), p. 92, gives the following definition of the word "appurtenance": "In law, such buildings, rights, and improvements as belong to a house or to land are called the appurtenances, as outbuildings, gardens, pasturage, etc. to a house, * * *."

In Black's Law Dictionary (3d Ed.), p. 132, "appurtenance" is defined as: "That which belongs to something else; an adjunct; an appendage; something annexed to another thing more worthy as principal, and which passes as incident to it, * * *."

"The term 'appurtenances' may perhaps include, without any forced construction, the yard and sidewalk, and work and labor performed and materials furnished for such appurtenances as probably within the spirit of the

statute." McDermott v. Palmer, 8 Selden (N. Y.) 383.

"Appurtenances," as used in a New York statute giving a lien upon the lot, building, and "appurtenances" for materials used for making improvements thereon, include a sidewalk in front of the premises. See Kenney v. Apgar, 93 N. Y. 539.

The New York statute referred to in the last-cited case was in substance similar to section 52-101, R. S. Supp., 1955. If a sidewalk may be called an appurtenance, a driveway may be called an appurtenance, and footings for a planter box may be called an appurtenance. In the light of the above definitions of "appurtenances" and considering the terms of the contract here involved, the contractor was required thereunder to level, grade, and seed the lawn, which was an appurtenance.

As we view the evidence introduced with reference to the motion for summary judgment, the same discloses a genuine issue of fact to be determined. The issue of fact to be determined is whether or not the items furnished by the subcontractor in May 1956 were furnished in the performance of the original contract, and if such items were so furnished by the subcontractor, then the question as to whether or not the subcontractor filed its mechanic's lien in time within the contemplation of the statute would arise. We determine only that the trial court erred in sustaining the defendants' motion for a summary judgment, for the reason that there is a genuine material issue of fact to be determined. The defendants were not entitled to a judgment as a matter of law.

We reverse the judgment of the trial court, and the cause is remanded for further proceedings according to law.

REVERSED AND REMANDED.

WENKE, J., participating on briefs.