THEODORE J. GABLE ET AL., APPELLANTS, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE.

127 N. W. 2d 475

Filed April 10, 1964. No. 35574.

Wright, Simmons & Hancock, for appellants.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, and Lyle C. Winkle, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an action by the State of Nebraska to condemn from the lands of the plaintiffs a temporary easement on 8.36 acres of land, and the temporary use of such land for securing fill dirt for the construction of a state highway. The jury found for the plaintiffs in the amount of $2,500. The plaintiffs have appealed.

Plaintiffs are the owners of a quarter section of land, the west line of which lies 1 mile east of the city limits of the city of Scottsbluff, Nebraska. At the time of the taking on August 23, 1962, it contained approximately 159 acres. The land was crossed from west to east by the Enterprise Irrigation District canal. Approximately 58 acres are north of the canal and the remaining 101 acres to the south of it. The 8.36-acre tract was a tract approximately 700 feet east and west and 450 feet north and south which was accurately described by metes and

bounds in the petition of taking. The south line of the tract adjoined the north bank of the Enterprise Irrigation District canal. The taking included a temporary haul road 30 feet in width and 754 feet long which entered the land from the west just above the Enterprise Irrigation District canal and followed the north bank of the canal to the 8.36-acre tract. The right to remove fill dirt from plaintiffs' lands was to terminate upon acceptance by the Department of Roads of the completed Project F-236 (13).

Plaintiffs' evidence is to the effect that the tract of 58 acres above the canal has a value for subdivision and building purposes due to its closeness to Scottsbluff and its characterization as high ground. Plaintiffs' evidence shows that after the removal of the fill dirt by the State, the 8.36 acres would be practically worthless and the remainder of the 58 acres would be seriously damaged. Plaintiff Theodore J. Gable testified that the 8.36 acres had a market value of $1,000 an acre and that the 10 adjoining acres would be damaged $800 per acre. Two other witnesses called by the plaintiffs testified that the 58 acres had a market value of $1,200 and $1,000 per acre, respectively, and that the easement taken would reduce the value of the remainder by $12,000.

The State submitted evidence to the effect that plaintiffs' land was about 1 mile east of the city limits of Scottsbluff and that it might have added value for subdivision purposes after a period of 10 years or more. Defendant's witness, William S. Bitner, a local real estate broker, testified that plaintiffs' land was farm land most of which was subject to irrigation. He described the land immediately north of the Enterprise Irrigation District canal as an outcropping of small rocks and gravel and not very productive for farming. The land north of the gravel brakes is the best on the farm and lies well for irrigation purposes. The 8.36 acres are rough and contain pits, indicating that dirt or gravel has pre-

viously been removed. The witness testified that the farm would have much less value except for its closeness to the city of Scottsbluff. The witness Bitner testified to recent sales of farms in the vicinity of plaintiffs' farm. He testified to the following sales: The Welsch farm, on April 5, 1962, containing 183 acres, for $355 per acre; the Achziger farm on April 17, 1962, containing about 100 acres, for $230 per acre; and the Anderson farm on February 28, 1959, containing 160 acres,. for $400 per acre. The witness Bitner testified that the fair market value of the farm for the best use for which it was available and adaptable before the taking was $59,300 and that such value after the taking was $57,000.

The project engineer in charge of the road construction testified. that the 8.36 acres was taken to obtain borrow or fill dirt for road construction. He testified that the department's plans called for the taking of 66,000 cubic yards of dirt but that additional dirt would be taken if needed. His evidence was to the effect that the excavating of the dirt would commence approximately 25 feet inside the perimeter of the easement and be dug out on a 4-to-1 slope to the bottom of the pit. The bottom of the pit was to be sloped two-tenths foot per 100 feet from the toe of the north slope to the top of the north bank of the Enterprise Irrigation District canal. The maximum depth of the excavation at the north. end was to be 18 feet. Objection was made to this evidence as an attempt by the State to reduce the, extent of the taking and a consequent mitigation of the damages.

We think the evidence was admissible to show the nature of the use of the easement and the damage that would result to the land taken by the easement and that not taken, as well. It was not admissible, of course, for the purpose of reducing the extent of the taking or for obtaining a mitigation of damages. It is the general rule that if evidence is admissible for any purpose, error may not be predicated on its admission for a limited pur-

pose only in the absence of a request for an instruction to so limit it. Carleton v. State, 43 Neb. 373, 61 N. W. 699; Chicago, R. I. & P. Ry. Co. v. Holmes, 68 Neb. 826, 94 N. W. 1007; Stroud v. Payne, 124 Neb. 612, 247 N. W. 595. No request for an instruction limiting the purpose of the evidence having been made, it was not error on the part of the trial court in not giving a limiting instruction.

Plaintiffs next assign as error the admission into evidence of the testimony of the witness Bitner as to the value of plaintiffs' land before and after the taking. The objection is based on the fact that the witness was permitted to assume that less than the maximum use was to be made of the easement taken and to thereby permit him to consider an unlawful mitigation of plaintiffs' damages in arriving at his opinion as to value.

The petition and condemnation plat filed by the State in the condemnation proceeding show only the area to be used in obtaining fill dirt. The method or manner of taking the dirt, or the amount to be taken, is not shown. Since the plaintiffs must recover all of their damages in the condemnation proceeding, they are entitled, under such circumstances, to be paid for the maximum use to which the acquired easement could reasonably be put. We have heretofore recited the evidence of the project engineer as to the method and manner of the taking of the fill dirt, and the probable amount of fill dirt to be taken. As we have heretofore stated, this evidence was admissible to show the nature of the damages to the farm resulting from the taking, but it could not be shown, over objection, in mitigation of plaintiffs' damages. It is the law of this state that all damages sustained by the condemnation of property must be recovered in the condemnation proceeding. Snyder v. Platte Valley Public Power & Irr. Dist., 140 Neb. 897, 2 N. W. 2d 327. Promissory stipulations not contained in the petition of taking cannot affect the extent of the taking nor the amount of damages to be

awarded. Little v. Loup River Public Power Dist., 150 Neb. 864, 36 N. W. 2d 261, 7 A. L. R. 2d 355.

The sole evidence in the record which sustains the judgment for $2,500 is the testimony of the witness Bitner who gave as his opinion that the value before and after the taking was $59,300 and $57,000, respectively. In qualifying to give his opinion as to the value of the farm after the taking, he testified that he knew of and took into consideration the fact that excavation would commence some distance in from the perimeter of the easement, that three sides would be excavated at a 4-to-1 slope, and that no part of the excavation would be lower than the Enterprise Irrigation District canal. These were not qualifications or limitations contained in the petition of taking. The witness was then asked: "Now, based upon your investigation and your knowledge of the market, your experience in and about Scottsbluff and your knowledge of the uses to be made of this temporary easement, do you have an opinion of the fair market value of the Gable farm and property as of August 23, 1962, but subsequent to the taking of this temporary easement and removal of borrow dirt?" Objection was thereupon made, among others, that the answer was based upon facts which are contrary to the State's petition for the taking of materials. The objection should have been sustained for the reason that the opinion of the witness was based upon an element of damage not proper to be considered. The evidence of the project engineer could not have the effect of reducing the extent of the taking set forth in the petition of taking and the condemnation plat, or mitigating the damages to which plaintiffs were entitled. If the State desired to take less than the maximum use of the easement, it should have amended its petition; it cannot do so by the unaccepted promissory stipulations of the project engineer who can neither bind the State nor limit the extent of the taking as shown by the State's petition and con-

demnation plat. Plaintiffs were entitled to recover in the instant case all damages they would sustain by a maximum reasonable use of the easement taken. Since the only evidence which sustains the judgment is the incompetent testimony of Bitner, the judgment cannot stand for want of evidentiary support.

In discussing a somewhat similar situation the Illinois court said: "After the witnesses had testified and been cross-examined as to the basis of their opinions, the appellant moved to exclude their testimony in regard to the depreciation of land not taken outside of the three-rod strip for the reason that such opinions were based upon elements of alleged damage which were too remote and not sufficiently reasonably certain to be the basis for opinions touching the value or depreciation of the land, and the basis of the opinions was of such a character that the alleged elements of damage included in the opinions could not be separated so as to tell how much of the damage included was predicated upon improper elements. The court denied the motion. This was error. Opinions of witnesses based upon supposed elements of damage which were not recognized by law as proper to be considered in condemnation proceedings should have been excluded. Only such opinions as are based on evidence of lawful elements of damage can be of benefit to a jury in the assessment of the amount of damage. (citing cases)." Illinois Power & Light Corp. v. Talbott, 321 Ill. 538, 152 N. E. 486. See, also, Atlantic Coast Line R. R. Co. v. United States, 132 F. 2d 959; 1 Orgel on Valuation under Eminent Domain (2d Ed.), § 133, p. 573.

In the instant case the petition of taking was by metes and bounds. No restrictions were contained in the petition of taking other than that the purpose of the taking was to obtain fill dirt. Since the landowner must obtain judgment for all of his damages in a single action he may properly assume a taking for the maximum reasonable use to which the condemner could put the

easement. The extent of the taking or the damages to be recovered cannot be reduced by promissory stipulations or intrinsic evidence in conflict with the petition of taking. Since the opinion testimony was based in part on an improper element of damage, to wit, the limited use the State expected to make of it as testified to by the project engineer, the objections to its admission should have been sustained. As the objectionable testimony is the only evidence which supports the verdict, the judgment must be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.