.G. Leonard Richardson et al., appellees, v. Big Indian Creek Watershed Conservancy District of Gage and Jefferson Counties, State of Nebraska, a body politic and corporate, appellant.

151 N. W. 2d 283

Filed May 26, 1967.   No. 36488.

Everson, Wullschleger & Sutter, for appellant.

Vasey & Rist, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This action involves a condemnation of an easement, but the only issue tried was that of damages.

G. Leonard Richardson, who will hereinafter be referred to as plaintiff, and Florence Richardson are husband and wife. Plaintiff is the owner of the southeast quarter of Section 19, Township 2 North, Range 5 East of the 6th P. M., in Gage County, Nebraska, the highest and best use of which is as an agricultural production unit. Big Indian Creek Watershed Conservancy District of Gage and Jefferson Counties, which will hereinafter be referred to as defendant, is a body politic and corporate, organized for the development of programs defined in section 2-1550, R. S. Supp., 1965. This statute provides as follows: "A watershed area may be formed as a subdistrict of a soil conservation district, as provided in sections 2-1550 to 2-1565, to be known as a watershed conservancy district, for the purpose of developing and executing plans and programs relating to any phase for

the conservation of water, water usage, drainage, flood prevention, flood control, erosion prevention and control of erosion, floodwater and sediment damages, * * *."

The defendant is constructing a flood retardation structure on 24 acres approximately one-half mile below plaintiff's property. This structure will cause rainwater to be impounded in natural drainage ditches in the area, including the area along two drainage ditches, one on the east and one on the west side of plaintiff's farm. The easement is for the permanent and temporary detention of waters upon the land to a maximum of 9.87 acres on the east side of plaintiff's property, and 9.23 acres on the west side of plaintiff's property, or a maximum easement of 19.1 acres. The permanent conservation pool area, however, embraces only 0.2 acre, and will be within the present drainage ditches. The remainder of the area may be temporarily flooded, but otherwise may be used by plaintiff for pasture or for cultivated crops. The extent of the flooding will depend on the frequency and amount of rainfall in the area. Plaintiff's farm drains 1,600 acres. The maximum easement is expected to handle 7.87 inches of rain, while it is estimated a 4-inch rain will flood 6.54 acres for 4 days and 7 hours.

Defendant is given the right to use the easement area for its purposes, and may do reasonable grading and earth moving for the purpose of establishing normal drainage. The easement also includes the right of ingress and egress at any time over and upon plaintiff's property. A jury fixed plaintiff's damages at $1,925, to which the court added $50 abstract expense, $235 for plaintiff's expert witnesses, and $450 as attorneys' fees. Defendant perfected this appeal.

Defendant raises two questions: First, the failure of the trial court to instruct on special benefits; and second, the giving of the trial court's instructions Nos. 9 and 10. The only testimony on special benefits is the following by two of defendant's experts.

Robert A. Mook: "Q Would the easement have any

beneficial effects to the Richardson property? A In my opinion, yes. Q In what area? A In the areas of the existing pool areas; in the existing drainage channels. Q What would those effects be, Mr. Mook? A It would have an effect of stabilizing the present channels plus slowing the runoff which is generally considered to be detrimental to any farmstead."

William A. Eyth: "A My opinion is based on personal observation of similar easements such as is involved in this case here. In the area on the east side there is quite a deep ditch, there is water, as you heard time and again, standing here now, not very much water but a little water in the bottom of this ditch (indicating). The ditch itself continues to back up this way (indicating). In my opinion I can't find any element of damage in this particular area over here to the Richardson property; I would rather tend to think that this ditch will be stabilized or at least it won't certainly become any deeper if and when there is a structure built somewhere down below here (indicating). In this area here (indicating) the same situation exists, this is quite a deep ditch, and I can stand down at the bottom of it right here (indicating) and if you stood back here aways (indicating) you couldn't see the top of my head."

Benefits resulting from public improvements where property is taken by condemnation are of two kinds, special and general. Special benefits are those which are peculiar to the tract taken, whereas general benefits are those which arise from the fulfillment of the public object which justified the taking. The burden of proving special benefits is on the condemner. The following from Backer v. City of Sidney, 166 Neb. 492, 89 N. W. 2d 592, draws the distinction: "The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the pub-

lic improvement. In other words the general benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, from proximity to a desirable object, or in various other ways."

It is not necessary herein to decide whether the plaintiff received special benefits, because the evidence was insufficient to justify the submission of that issue to the jury. Slowing the runoff would be common to the area and is the purpose of the project. Otherwise, both of defendant's experts confine the special benefits to the existing drainage channels. This is the area embracing the permanent conservation pool, or the 0.2 acre which will be permanently out of production, and while only an easement is involved, this 0.2 acre is permanently appropriated to a public use and should not be charged with special benefits. The law is well settled, where land is taken for public use the owner is entitled to the fair market value of the land taken, and special benefits cannot be set off against such value but may be against incidental damages to the rest of the tract. City of Omaha v. Howell Lumber Co., 30 Neb. 633, 46 N. W. 919.

In any event, neither of defendant's experts attempted to evaluate the value the alleged special benefit would contribute to plaintiff's land. To do this it must be expressed in some manner in terms of money. See Phillips v. State, 167 Neb. 541, 93 N. W. 2d 635.

On what basis, other than pure conjecture or speculation, could the jury have valued special benefits if it found them to exist? The general rule is stated thus in 27 Am. Jur. 2d, Eminent Domain, § 358, p. 207: "* * * any alleged benefit, to have any standing in court at all, must be genuine and capable of estimation in money value. It must add to the present fair market value

of the remaining land with reference to all the uses to which it is reasonably adapted, and for which it is available. The courts are agreed that remote, uncertain, contingent, imaginary, speculative, conjectural, chimerical, mythical, or hypothetical benefits cannot, under any circumstances, be taken into consideration."

If a special benefit exists, it must be material and capable of measurement by computation, and should be reflected in the value of the remaining land immediately after the taking.

In instruction No. 7 the trial court delineated the measure of plaintiff's damages as the difference in the reasonable market value of plaintiff's farm before and after the taking. Defendant agrees with this instruction, but complains that the trial court changed the measure of damages by giving instructions Nos. 9 and 10, which defendant insists instructed the jury to value the easement separately. Instruction No. 9 is as follows: "It is the law of the State of Nebraska that in determining compensation for the taking of real estate from a land owner, together with damages that may result therefrom, you should base the compensation to the owner to be determined by the actual legal rights acquired by the condemnor, and not by the use the condemnor may make of the right. The fact that the condemnor in this case, Big Indian Creek Watershed Conservancy District of Gage and Jefferson Counties, State of Nebraska, a body politic and corporate, may have no present intention of exercising all the rights acquired or the probability that its use may be a limited one, are not proper matters for consideration in fixing of compensation, since damages are required to be paid for the right appropriated, even though the full use may not be immediately contemplated or never had. The presumption is, that the condemnor will exercise its rights, and use and enjoy the property taken to the full extent."

The objection to instruction No. 10 is directed to similar language in that instruction. The portion set out in

defendant's brief is as follows: "Therefore, in determining the damages to which plaintiffs are entitled, you should assume that the defendant * * * will make maximum reasonable use to which the easement can be made, and you should not reduce the damages awarded to plaintiffs by reason of statements or evidence by the defendant or by witnesses on its behalf relating to the improbability or unlikelihood of maximum reasonable use."

It is evident that these instructions were given to cover the issue presented by evidence adduced by the defendant as to the frequency of the use of the easement taken. It instructed the jury that the evidence was taken for the limited purpose of showing the extent of the easement and the nature of the damages, and not to mitigate those damages.

The law is well settled in this jurisdiction that in a condemnation proceeding an owner receives full compensation for all damages sustained, and the measure of those damages is the actual legal rights acquired by the condemner, and not the use actually made of the land by the condemner. See Gable v. State, 176 Neb. 789, 127 N. W. 2d 475, in which we held as follows: "In a condemnation proceeding it is conclusively presumed that the owner damaged by the taking received, or was afforded opportunity to receive, full compensation for damages sustained.

"A condemner must take the rights he appropriates unconditionally by his petition of taking and he must pay full compensation to the condemnee for what he takes or is entitled to take by his petition of taking.

"When property is taken by eminent domain the compensation of the owner is measured on the basis of the actual legal rights acquired by the condemner and not by the use he actually makes of them."

The trial court properly instructed the jury in instruction No. 16, as follows: "The court has not attempted to embody all the law in any one instruction. Therefore,

in construing any single instruction, you must consider it in connection with all of the other instructions given you and you should consider them in harmony with each other."

Instructions Nos. 9 and 10 must be read in conjunction with instruction No. 7, the damage instruction. When so read, the jury could not have been misled.

For the reasons given, we find no merit to defendant's assignments of error. The judgment herein is affirmed.

AFFIRMED.