HARVEY L. SORENSEN AND MARGOT SORENSEN, APPELLANTS AND CROSS-APPELLEES, V. LOWER NIOBRARA NATURAL RESOURCES DISTRICT, APPELLEE AND CROSS-APPELLANT.

376 N.W.2d 539

Filed November 8, 1985.   No. 84-224.

Donald J. Pepperl of Pepperl & Melcher, P.C., and Frank Roubicek, for appellants.

Steven G. Seglin and Leroy W. Orton of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Harvey L. and Margot Sorensen appeal the judgment entered in the district court for Knox County on a verdict in an eminent domain proceeding commenced by Lower Niobrara Natural Resources District (NRD). We reverse and remand for a new trial.

On February 4, 1981, NRD applied for a permit under the Municipal and Rural Domestic Ground Water Transfers Permit Act, Neb. Rev. Stat. §§ 46-638 to 46-650 (Reissue 1984) (the act), to install two wells on a quarter section owned by Sorensens and obtain statutory spacing protection. After a hearing on April 2 the Director of Water Resources (director) approved NRD's application and authorized NRD to pump ground water at a rate of 864,000 gallons per day (600 gallons per minute) and prohibited landowners and occupiers from placing within 1,000 feet of NRD's well sites any well with a capacity in excess of 100 gallons per minute. See Neb. Rev. Stat. § 46-651 (Reissue 1984).

NRD, in January 1982, filed its petition commencing eminent domain proceedings regarding a quarter section owned by Sorensens, the southeast quarter of Section 20, Township 29 North, Range 6 West of the 6th P.M., in Knox County. According to its petition, NRD sought fee simple title to two 1/2-acre tracts in Sorensens' quarter section, "for the purpose of supplying water for the beneficial use to the residents of the West Knox Rural Water District . . ." by "construction of well sites, water storage tank, water transmission lines, distribution pipelines and their appurtenances." Regarding the proposed wells, NRD's petition did not specify the number of wells, a rate for pumping ground water, or the quantity of water to be extracted.

NRD's proposed well sites were located in one of four quarter sections owned by Sorensens—two quarter sections of dry cropland with some pasture in the south half of Section 20 and two quarters irrigated by center pivot systems on the south half of Section 21, lying east of Section 20. Farming was the highest and best use of Sorensens' land. The plat, below, depicts the location of Sorensens' quarters and the two well sites sought by NRD.

Sorensens operated their quarters as a farm unit. Corn production on Sorensens' dryland was 75 bushels per acre, while the irrigated quarters produced 150 bushels per acre. Four wells, two for each center pivot system, supplied water for the irrigated cropland. Water pumped at the rate of 600 gallons per minute is necessary for operation of the existing center pivot irrigation systems on Sorensens' land.

Before proceeding, a glossary of hydrologic terms, or water words, may be helpful:

Aquifer: A geological formation or layer of material that is porous or permeable to water, thus capable of containing or carrying ground water.

Cone of depression: The funnel-shaped area around a well, where the water table has been lowered by the withdrawal of ground water through the well. The spout of the "funnel" is downward along the pump, while the upper part of the funnel, the radius of influence, extends laterally away from the pump.

Drawdown: The amount by which the elevation of the surface of a body of water is or could be reduced by withdrawal or release of water.

Recharge: Addition of water in an aquifer to replace that which has been withdrawn.

See 7 R. Clark, Waters and Water Rights (1976).

Sorensens' land and NRD's well sites are located over a common aquifer, that is, at the northern edge of the Ogallala aquifer, an alluvion outwash from the Rocky Mountains. Test holes on NRD's proposed sites disclosed a ground water yield of 300 to 350 gallons per minute. North of NRD's sites, near the center of the southeast quarter of Section 20, a test hole drilled by Sorensens indicated a yield from 150 to 200 gallons per minute.

Hydrologists testifying at trial did not materially disagree with each other's methodology but took issue with the different information used by opposing experts to formulate their opinions and feed their computers. The hydrologists described their use of a computer ground water model, a simulated aquifer to demonstrate behavior of the formation over a protracted period of water withdrawal. The model involves complicated computations vulnerable to "garbage in, garbage out," that is, computer computations were only as good as the validity of data supplied.

Testimony from expert witnesses was a sequence of point and counterpoint.

One of Sorensens' hydrologists testified the primary and most important characteristic of an aquifer is the formation's capability of providing economic withdrawal of subterranean water. In Sorensens' situation, however, there was no recharge of the aquifer supplying ground water for irrigation. Using a pumping rate of 300 gallons per minute on each of NRD's well sites and considering a well's expanding cone of depression, Sorensens' hydrologist concluded that NRD's extraction of water would lower the water table to a level where Sorensens' existing wells would become useless in 3 to 5 years. According to the hydrologist, with NRD's pumping ground water at a rate of 600 gallons per minute, Sorensens will "end up going dry." In the opinion of Sorensens' expert, as the cone of depression for NRD's wells expands, the ground water level will become so depleted that Sorensens' irrigation wells will "suck air."

Testimony of real estate appraisers called by Sorensens focused on the vulnerability of Sorensens' ground water supply as a result of NRD's project. According to Sorensens'

appraisers, on account of well spacing and impracticality of irrigation wells outside the area restricted to NRD's wells, any land development dependent on ground water north of NRD's well sites was curtailed, resulting in reduction of land value and price obtainable for Sorensens' dry land. Also, a factor bearing upon damages was Sorensens' diminishing supply and eventual loss of ground water for irrigation presently conducted, a loss caused by NRD's unlimited pumping pursuant to rights acquired in eminent domain.

NRD retained consulting engineers to design wells based on information supplied in a well-driller's report indicating sufficient ground water yield for two 300-gallon-per-minute wells. Sorensens objected, but the court allowed NRD's project engineer to testify about the number of people to be served by the project and further testify that, considering the proposed project, average daily pumping at a rate of 173 gallons per minute would meet the demands upon NRD until the year 2005.

Over Sorensens' objection, the court admitted exhibit 104, a copy of the director's order granting NRD's permit under the act, which exhibit in part contained the following:

5. Testimony at the hearing additionally indicated the purpose of [NRD's] project is to provide a more economic, reliable and better quality water supply for approximately 150 rural farmsteads and two small villages. . . .

6. . . . [NRD's] expert witness gave as his opinion that the well operation and consequent drawdown would have no appreciable effect on the ground water use activities of adjacent landowners. . . .

IT IS THEREFORE FOUND that the construction of wells and withdrawal of ground water requested by the [NRD] is reasonable, is not contrary to the conservation and beneficial use of ground water, and is not otherwise detrimental to the public welfare, and that the application should be approved.

On the basis of NRD's pumping ground water at a rate of 175 gallons per minute from each well, NRD's hydrologist gave an opinion regarding Sorensens' supply of ground water, that is, in reference to Sorensens' wells, "[N]o appreciable interference in

yield and drawdown will be seen by the Sorensens."

NRD's real estate appraiser, relying on NRD's hydrologic information that pumping at 175 gallons per minute would not cause any significant loss in Sorensens' ground water supply, testified there was no damage to the Sorensen farm as a result of NRD's acquisition of the well sites. On cross-examination NRD's appraiser acknowledged that his opinion on the value of Sorensens' land after the taking and damages was based on the opinion of NRD's hydrologist, who in turn had formed his opinion (no loss of ground water for Sorensens) on the premise that NRD would pump 175 gallons per minute from each of its two wells. Sorensens moved to strike the appraiser's testimony on damage to their remaining tract because the expert had failed to take into account the full extent of NRD's rights acquired by eminent domain but, rather, had based his opinion on NRD's exercising less than its rights acquired by condemnation.

Toward the end of testimony adduced during the 4-day trial, one of the hydrologists attested that water runs downhill.

After a conference on instructions the court gave the following among its instructions:

> Your verdict for [Sorensens] should therefore represent the sum of money which justly compensates [Sorensens] both for the property taken and for any reduction in value to the remainder of [Sorensens'] property . . . . [Instruction No. 4.]

> [Y]ou may consider . . . every non-speculative element of inconvenience, annoyance and disadvantage which the taking has caused [Sorensens] and which would influence a purchaser's decision to buy the property or pay a certain amount for [the remainder]. [Instruction No. 5.]

> Every landowner shall be entitled to a reasonable and beneficial use of the ground water underlying his, her, or its land, subject to the correlative or co-equal rights of other landowners to a reasonable proportion of the whole when the ground water supply is insufficient for all users. [Instruction No. 6.]

> The Statutes of the State of Nebraska provide in

substance as follows:

. . . .

If the Director of Water Resources, after notice and hearing, finds that the withdrawal and transportation of ground water requested by the applicant is reasonable, is not contrary to the conservation and beneficial use of ground water, and is not otherwise detrimental to the public welfare, he shall grant a permit to the applicant to withdraw and transport water in the amount applied for or in a lesser amount; Provided, nothing in the granting of such permit shall be construed as limiting any right of an owner of an estate or interest in or concerning land to recover damage for any injury done to his or her land or to any water rights appurtenant thereto. You are instructed that Exhibit 104 is a permit granted to [NRD] under the provisions of the [act]. [Instruction No. 7.]

At the conference on instructions, Sorensens tendered, and the court rejected, an instruction supplementing the court's instruction No. 5 as follows:

[C]ompensation to the owners should be based upon the condemner's actual legal rights it is acquiring as described in [declaration of taking found in NRD's petition in eminent domain] and not the use the condemner may make of such rights.

That the condemner in this case may have no present intention of exercising all of the rights acquired or the probability that the use of the property may be limited, are not proper matters for consideration in fixing compensation, since damages are required to be paid for the rights appropriated, even though the full use may not be immediately contemplated or actually ever accomplished. The presumption is that the condemner will exercise its rights and use and enjoy the property taken to the fullest extent.

Sorensens also tendered, and the court refused, instruction No. 19: "The condemner has adduced evidence showing the purpose and nature of the taking and proposed project. The evidence was admitted for that purpose and cannot be used to reduce the extent of the taking or to obtain a mitigation of

damages."

Sorensens objected to instruction No. 7 and its incorporation of exhibit 104 (copy of the director's order).

Sorensens' 15 assignments of error are distilled into 6 complaints, that the district court erred in: (1) Giving instruction No. 6 regarding a landowner's right to use ground water; (2) Failing to give Sorensens' tendered instruction No. 5 supplementing instruction No. 5 given by the court; (3) Admitting testimony about NRD's projected or anticipated exercise of its right and use of property acquired by eminent domain and refusing to give Sorensens' tendered instruction No. 19; (4) Admitting a copy of the director's order (exhibit 104); (5) Giving instruction No. 7, incorporating exhibit 104; and (6) Refusing to strike the opinion testimony of NRD's appraiser regarding damages caused by NRD's taking.

NRD has cross-appealed and contests the district court's judgment awarding an attorney fee and expert witness fee for Sorensens. See Neb. Rev. Stat. § 76-720 (Reissue 1981).

The case before us raises questions involving the Nebraska Constitution, water law, eminent domain, damages, and causes of action.

NRD suggests a general, preliminary proposition: If Sorensens cannot own ground water, damages for injury to Sorensens' right to use ground water are not recoverable in eminent domain proceedings.

Rather than the English rule by which landowners have an absolute right to capture water found beneath their lands, as observed in *Olson v. City of Wahoo*, 124 Neb. 802, 248 N.W. 304 (1933), Nebraska has developed a rule for ground water based on reasonable use and correlative rights, namely:

> [T]he owner of land is entitled to appropriate subterranean waters found under his land, but he cannot extract and appropriate them in excess of a reasonable and beneficial use upon the land which he owns, especially if such use is injurious to others who have substantial rights to the waters, and if the natural underground supply is insufficient for all owners, each is entitled to a reasonable proportion of the whole . . . .

*Id.* at 811, 248 N.W. at 308. See, also, *Luchsinger v. Loup River*

*Public Power District*, 140 Neb. 179, 299 N.W. 549 (1941); *Metropolitan Utilities Dist. v. Merritt Beach Co.*, 179 Neb. 783, 140 N.W.2d 626 (1966); *Prather v. Eisenmann*, 200 Neb. 1, 261 N.W.2d 766 (1978); *State ex rel. Douglas v. Sporhase*, 208 Neb. 703, 305 N.W.2d 614 (1981), *rev'd on other grounds* 458 U.S. 941, 102 S. Ct. 3456, 73 L. Ed. 2d 1254 (1982).

· Qualified by the requirement of reasonable, proportionate sharing during shortage of ground water, Nebraska's common law permits a landowner to use ground water extracted from beneath the owner's land, provided such landowner's extraction does not exceed a reasonable and beneficial use on the landowner's property. *Olson v. City of Wahoo, supra.*

Subject to constitutional limitations and the consent of Nebraska's citizens, the Legislature has the right and power to determine state policy on ground water. See, *Metropolitan Utilities Dist. v. Merritt Beach Co., supra; State ex rel. Douglas v. Sporhase, supra.*

In apparent concern for public water suppliers on account of the common law's restriction on transfer and transport of ground water off the surface overlying a source of ground water, the Legislature, in 1963, enacted the Municipal and Rural Domestic Ground Water Transfers Permit Act, by which the Director of Water Resources was authorized to grant a permit to public water suppliers "(a) To locate, develop, and maintain ground water supplies through wells or other means and to transport water into the area to be served and (b) to continue existing use of ground water and the transportation of ground water into the area served." § 46-638(1).

The director, after a hearing and upon a finding "that the withdrawal and transportation of ground water requested by the applicant is reasonable, is not contrary to the conservation and beneficial use of ground water," shall issue a permit under the act. § 46-642.

Additionally, the act provides:

Nothing in sections 46-638 to 46-650 shall be construed as limiting any right of an owner of an estate or interest in or concerning land to recover damage for any injury done to his or her land or to any water rights appurtenant thereto; nor shall sections 46-638 to 46-650 limit rights of

condemnation which public water suppliers have under the laws of the State of Nebraska.

§ 46-647.

In *State ex rel. Douglas v. Sporhase, supra* at 706-09, 305 N.W.2d at 617-18, after concluding that ground water in Nebraska is publicly owned, this court stated:

Since the Nebraska common law of ground water permitted use of the water only on the overlying land, legislative action was necessary to allow for transfers off the overlying land, even for as pressing a need as supplying urban water users.

. . . .

. . . The public, through legislative action, may grant to private persons the right to the use of publicly owned waters for private purposes; but . . . the public may limit or deny the right of private parties to freely use the water when it determines that the welfare of the state and its citizens is at stake. . . .

. . . Ground water use is not an unlimited private property right in Nebraska law.

By enacting the Municipal and Rural Domestic Ground Water Transfers Permit Act as a part of Nebraska's policy, the Legislature altered certain aspects of common law governing use of ground water. Permittees under the act are exonerated from the common-law prohibition against transfer and transportation of ground water. See § 46-638(1)(b). Consequently, a public water supplier's use of ground water is not restrictively localized to the site of the water's extraction. Were NRD restricted to retention and use of 864,000 gallons on its tracts—the minimum daily yield extractable from the aquifer according to NRD's test results—each of the proposed 1/2-acre well sites would be transformed into a veritable Atlantis. In permitting transfer of ground water from the site of its extraction, the act has removed use on overlying land as an index for the "reasonable and beneficial use" required by common law. Whether overlying land remains a factor in formulating a "reasonable proportion" for sharing ground water during shortage is a question not required to be answered in the present case. Finally, to assure a public water supplier's

uninterrupted transfer and transportation of ground water, § 46-647 supplies a remedy of compensatory damages for a permittee's injury to another's land or water rights, in contrast with injunctive relief available under common law. Nevertheless, concerning landowners without a permit under the act, the common law still governs use of ground water inasmuch as such use is a limited private property right in Nebraska. See *State ex rel. Douglas v. Sporhase*, 208 Neb. 703, 305 N.W.2d 614 (1981).

What, then, is the nature of a landowner's right to use ground water? As already noted, the right to use ground water is a derivative right immediately dependent on ownership of the surface over a source of ground water. Thus, the right to use ground water does not float in a vacuum of abstraction but exists only in reference to and results from ownership of the overlying land. An appurtenance is "[t]hat which belongs to something else; an adjunct; an appendage. Something annexed to another thing more worthy as principal, and which passes as incident to it . . . ." Black's Law Dictionary 94 (5th ed. 1979). See, also, *Clearwater Elevator Co. v. Hales*, 167 Neb. 584, 94 N.W.2d 7 (1959). *Appurtenance* "signifies something pertaining to another thing as principal, and which passes as incident to the principal thing, which is different, but of a congruous nature." *City of Lincoln v. Lincoln St. R. Co.*, 67 Neb. 469, 487, 93 N.W. 766, 772 (1903). "A thing is deemed to be incidental or *appurtenant* to land when it is by right used with the land for its benefit, as in the case of a way, or water-course, or of a passage for light, air, or heat from or across the land of another." Black's Law Dictionary, *supra* at 94. Cf. *Neilson v. Leach*, 140 Neb. 764, 1 N.W.2d 822 (1942) (an easement, as an appropriate and useful adjunct of land, may be appurtenant to the real estate). Without embarkation on an ontological or metaphysical investigation, it is clear that the right to use ground water is an attribute of owning fee simple title to land overlying a source of ground water and is inseparable from the land to which it applies. We conclude that the right of an owner of overlying land to use ground water is an appurtenance constituting property protected by Neb. Const. art. I, § 21: "The property of no person shall be taken or

damaged for public use without just compensation therefor."

With that background regarding use of ground water, including the nature of Sorensens' right to use ground water, we can now proceed to dispose of Sorensens' several assignments of error.

Sorensens contend that the court, by giving instruction No. 6, informed the jury that NRD was an ordinary landowner subject to common law governing use of ground water. NRD suggests it is a generic landowner bound to observe common law in pumping water from its well sites. We need not dwell on this aspect of the case, because NRD, as a permittee under the act, is entitled to use ground water in a manner not otherwise accorded a landowner under common law and outside the purview and protection of the Municipal and Rural Domestic Ground Water Transfers Permit Act. As a result of the act, NRD has become a peculiar type of landowner granted very special status with statutory rights contravening common law. In substance and effect, instruction No. 6 informed the jury that Sorensens and NRD enjoyed equal rights in the use of ground water. Common law restricts Sorensens' use of ground water to a "reasonable and beneficial use" on their overlying land. The act authorizes NRD's transfer of ground water for use somewhere other than the site of extraction. Although § 46-642 does refer to a "reasonable . . . and beneficial use of ground water" on the part of NRD, such statutory characterization of use refers to the director's findings necessary for issuance of a permit under the act, not to the common-law duty imposed on an owner of land overlying ground water. Because instruction No. 6 indicated that rights to use ground water, Sorensens' and NRD's, were based on common law, the given instruction is incorrect and misleading regarding the parties' respective rights to use ground water.

Next, Sorensens argue that the court's instruction No. 5 is deficient because the given instruction allowed the jury to determine damages on the basis of NRD's prospective or contemplated use of property in exercising its rights acquired rather than damages based on rights actually acquired by eminent domain. NRD responds that § 46-647 obligates NRD to pay damages only when NRD's future use injures Sorensens'

ground water supply.

A pivotal question in this case involves the relationship between eminent domain and the Municipal and Rural Domestic Ground Water Transfers Permit Act. More specifically, our inquiry is whether depletion of a common source of ground water, as the result of water transfer off the overlying land acquired by a permittee's exercise of eminent domain, is an element of damage recoverable by a condemnee.

NRD fails to distinguish *injury* from *damage*, words not necessarily synonymous. Injury is an invasion of any legally protected interest of another, while damage is a loss, detriment, or harm sustained by reason of an injury. See *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984).

A cause of action is judicial protection of one's recognized right or interest, when another, owing a corresponding duty not to invade or violate such right or interest, has caused a breach of that duty. See, *City of Alliance v. Cover-Jones Motor Co.*, 154 Neb. 900, 50 N.W.2d 349 (1951); *Gaspar v. Flott*, 209 Neb. 260, 307 N.W.2d 500 (1981).

In *Little v. Loup River Public Power District*, 150 Neb. 864, 36 N.W.2d 261 (1949), this court held that Neb. Const. art. I, § 21, guarantees a condemnee the right to recover all damages caused by exercise of eminent domain and that a condemnee is "assured by the Constitution of the state recovery in one action of the whole amount of the damages . . . sustained because of the taking without the delay or expense of future lawsuits." *Id.* at 868, 36 N.W.2d at 264. Consequently, as a result of a government's exercise of eminent domain, a condemnee has a cause of action to recover just compensation for the condemnee's property taken by the government for a public purpose.

In a condemnation action there are two elements of damage: (1) market value of the land taken or appropriated; and (2) diminution in value of the land remaining, less special benefits. *Crawford v. Central Neb. Public Power & Irrigation Dist.*, 154 Neb. 832, 49 N.W.2d 682 (1951). All damages, present or prospective, which are caused by the exercise of eminent domain must be compensated and recovered in the original condemnation proceeding. *State v. County of Cheyenne*, 157

Neb. 533, 60 N.W.2d 593 (1953). In *Snyder v. Platte Valley Public Power and Irrigation District*, 140 Neb. 897, 901, 2 N.W.2d 327, 329 (1942), this court stated: "It is well settled by the decisions of this court that the final award in a condemnation proceeding for the acquisition of a right of way is conclusive upon the parties thereto as to all matters necessarily within the issues joined, although not formally litigated."

In a condemnation action a condemnee is entitled to recover compensation for all damages caused by the taking. Damages recoverable in a condemnation case are determined by the extent of the taking and a condemner's rights actually acquired, not by a condemner's use resulting from less than full exercise of a right acquired by eminent domain. See, *Richardson v. Big Indian Creek Watershed Conservancy Dist.*, 181 Neb. 776, 151 N.W.2d 283 (1967); *Little v. Loup River Public Power District, supra*. In considering just compensation and the amount of damages to be paid a condemnee, a jury may consider factors which would influence a well-informed buyer in determining a price payable for the property at the time of the government's taking. See, *Harmony Lanes v. State*, 193 Neb. 826, 229 N.W.2d 203 (1975); *Iske v. Omaha Public Power Dist.*, 185 Neb. 724, 178 N.W.2d 633 (1970).

In *Hunt v. Chicago, B. & Q. R.R. Co.*, 180 Neb. 375, 377, 143 N.W.2d 263, 265 (1966), this court stated a general rule for the measure of damages involving injury to real estate: " 'The measure of damages for a permanent injury to real property is usually the (difference between the) fair value of the property immediately before and immediately after the injury. . . .' " See, also, *"L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 322 N.W.2d 651 (1982). Obviously, a landowner prosecuting a cause of action under § 46-647 will present evidence substantially the same, if not identical, as evidence presented by a landowner involved in an eminent domain proceeding. Bringing one action to recover damages for government's injury to a landowner's right to use ground water and yet another action for damages caused by the government's taking property—the character of which is determined by a water right—splits a cause of action. As expressed in *Lake Lorraine, Inc. v. American Telephone &*

*Telegraph*, 378 F. Supp. 13, 19 (E.D. Mo. 1974):

> The doctrine surrounding the rule against splitting a cause of action is in the nature of a rule of repose with the double purpose of protecting both the courts and the litigants from the harassment of repetitious litigation. . . . It is fundamental that causes of action should not be tried piecemeal . . . .

See, also, *Buder v. Fiske*, 174 F.2d 260 (8th Cir. 1949). Having already concluded that a landowner's right to use ground water is a proprietary appurtenance inseparable from the land benefited, and, therefore, a right protected by the Constitution, it would indeed be a legal paradox to require a condemnee to recover all condemnation damages in one action excluding consideration for interference of an attribute essential to the complete use and enjoyment of the property condemned. Even in the absence of eminent domain proceedings, a landowner has a cause of action for damage resulting from injury to the right to use ground water. See § 46-647. Such cause of action existing outside a condemnation case is little solace to a landowner who must recover all damages in eminent domain proceedings or who, on commencement of a subsequent action under § 46-647, will be confronted with a principle operating as a conclusive bar to a recovery of damages, namely, all compensation for injury to the condemnee's land had been recovered in the condemnation case. Section 46-647 in part provides that the act shall not "limit rights of condemnation which public water suppliers have under the laws of the State of Nebraska." If the act does not limit a condemner's rights in eminent domain, the act does not limit a condemner's duty to pay just compensation and a condemnee's right to receive all damages resulting from eminent domain. We therefore hold that when condemnation proceedings involve a public water supplier as a permittee under the Municipal and Rural Domestic Ground Water Transfers Permit Act, all damages caused by the taking must be recovered by the condemnee in the eminent domain proceedings, including damages to the remainder and water rights appurtenant to the remainder.

Having examined the relationship between an eminent domain proceeding and the cause of action existing under

§ 46-647, we now consider instruction No. 5 given by the court, Sorensens' requested instruction, and the likely effect of the given instruction on a jury in view of evidence about NRD's contemplated or projected use of the property and rights acquired.

For some time past, the rule in Nebraska has been, and continues to be, a promissory stipulation not contained in the condemner's petition cannot affect the extent of the taking or the amount of the damages to be awarded. See *Blobaum v. State*, 179 Neb. 304, 137 N.W.2d 855 (1965).

> In the absence of an agreement between the parties the condemner must take the rights he seeks to appropriate unconditionally and he must make full compensation for what he takes. An unaccepted promise to do something in the future cannot affect the character or the extent of the rights acquired or the amount of the damages to be recovered as just compensation. When property is taken by the power of eminent domain, the compensation of the owner is to be determined by the actual legal rights acquired by the condemner and not by the use he may make of the rights.

*Little v. Loup River Public Power District*, 150 Neb. 864, 866, 36 N.W.2d 261, 263-64 (1949). See, also, *Danish Vennerforning & Old Peoples Home v. State*, 191 Neb. 774, 217 N.W.2d 819 (1974).

NRD's declaration of taking, as contained in its condemnation petition, did not specify any restriction on NRD's use of the property acquired. NRD's petition alleged no basis for any inference that NRD will exercise less than its full rights or possess its property with less than complete use. NRD's pumping ground water is limited only by nature and the method of extracting water, not by the taking and acquisition of rights sought in NRD's condemnation petition. We note a requirement imposed by Neb. Rev. Stat. § 76-704.01(4) (Reissue 1981) concerning a condemnation petition, namely, such pleading shall include: "The quantity needed to fulfill the public purpose for which [the property is] taken." Beyond a metes-and-bounds description and the nature of title acquired, NRD's petition imposed no limitation on the use of property

appropriated from Sorensens. Instruction No. 5 was a prejudicially incomplete statement of law regarding damages "to be determined by the actual legal rights acquired by the condemner and not by the use he may make of the rights." *Little v. Loup River Public Power District, supra* at 866, 36 N.W.2d at 264. The deficiency of instruction No. 5 was magnified and intensified as the result of testimony from NRD's project engineer about a contemplated use into the 21st century, a use projected on less than full exercise of NRD's rights acquired in eminent domain. The engineer's testimony in essence reduced the extent of NRD's taking, that is, described NRD's project as something less than a full exercise of its rights acquired or less than complete use of the property appropriated. Any limitation of a right acquired and consequent use must be expressed in a condemnation petition, not implied in a condemner's evidence about prospective use. Evidence offered by a condemner to diminish the taking stated in the condemnation petition or to describe anything less than full exercise of rights acquired by eminent domain is irrelevant to the question of damages caused by the condemner's appropriation and, therefore, inadmissible. Rule 402, Nebraska Evidence Rules (Neb. Rev. Stat. § 27-402 (Reissue 1979)). Cf. *Gable v. State*, 176 Neb. 789, 792, 127 N.W.2d 475, 478 (1964) (evidence of use is not admissible "for the purpose of reducing the extent of the taking or for obtaining a mitigation of damages"). See Rule 401 (relevant evidence, defined), Nebraska Evidence Rules (Neb. Rev. Stat. § 27-401 (Reissue 1979)). Admission of irrelevant evidence showing a diminution of the taking and, consequently, a reduction of damages prejudicially affected Sorensens' right to compensation required by the Nebraska Constitution. See Rule 103(1), Nebraska Evidence Rules (Neb. Rev. Stat. § 27-103(1) (Reissue 1979)). Sorensens' requested supplemental instruction No. 5 should have been given to complete an appropriate instruction on damages. Under the circumstances Sorensens' tendered instruction No. 19 should have been given as well.

Sorensens' complaint directed to instruction No. 7 and admission of exhibit 104 is valid. Existence of a permit under the act was relevant in reference to NRD's use of ground water as a public water supplier. However, admitting the contents of

exhibit 104, the copy of the director's order approving NRD's application, was prejudicial error. The exhibit informed the jury that during the proceedings before the director, an unidentified expert for NRD testified that NRD's well operations "would have no appreciable effect on the ground water use activities of adjacent landowners." Such opinion evidence, transmitted to the jury by admission of exhibit 104, was rank hearsay: "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Rule 801(3), Nebraska Evidence Rules (Neb. Rev. Stat. § 27-801(3) (Reissue 1979)). There lurked twofold prejudice to Sorensens' claim in the admission of exhibit 104. The mystery expert's opinion evidence, given at the hearing before the director and introduced in Sorensens' trial, was not subject to cross-examination during the condemnation trial. This circumstance placed the documentary hearsay opinion beyond a jury's considered evaluation. Moreover, such hearsay underscored and corroborated the opinion given by NRD's hydrologist at trial: "no appreciable interference in yield and drawdown will be seen by the Sorensens." The opinion given by NRD's hydrologist at trial was the keystone of a later opinion expressed by NRD's appraiser concerning damages resulting from the taking, another aspect of the trial treated subsequently in this opinion. Additionally, the director's findings that NRD's construction of its wells and use of ground water were "reasonable [and] not contrary to the conservation and beneficial use of ground water" and were not "detrimental to the public welfare" are irrelevant evidence on the question of damages caused by NRD's taking. With all the variables and undisclosed quantities entering the director's findings, any connection between departmental disposition of NRD's application and compensation due Sorensens as a result of NRD's taking is reduced to mere possibility, not the rational relationship based on likelihood required for relevant evidence. Cf. *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985) (a codefendant's conviction by a jury is irrelevant as evidence of a defendant's guilt). While NRD's reasonable use of ground water consistent with conservation is commendable, the

director's findings in that regard are irrelevant to the question of Sorensens' damages. The contents of exhibit 104 were inadmissible under the circumstances. Correspondingly, instruction No. 7's incorporating the contents of the director's order was erroneous and prejudicial to a jury's fair deliberation on the question of damages caused by NRD's taking. See Rule 103(1), Nebraska Evidence Rules.

Sorensens' next question relates to the jury's consideration of opinion evidence from NRD's appraiser on the matter of damages to Sorensens' remaining tract after the taking by NRD. As demonstrated on cross-examination, NRD's appraiser based his opinion on NRD's exercising less than the right acquired by eminent domain, that is, the expert based his opinion on NRD's extraction of ground water at 175 gallons per minute, whereas no such limitation appears in the taking described in NRD's condemnation petition. It is a principle of law, or a "presumption," in eminent domain that a condemner will exercise all rights acquired and use the property appropriated to the full extent. See *Little v. Loup River Public Power District*, 150 Neb. 864, 36 N.W.2d 261 (1949).

In *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979), this court recognized that the opinion of an expert witness lacks probative value if the assumption for such opinion is not true. As a result of Rule 705, Nebraska Evidence Rules, where cross-examination of an expert witness discloses there is no adequate factual basis for an expert's opinion, such opinion is irrelevant (Rule 401, Nebraska Evidence Rules), is inadmissible (Rule 402, Nebraska Evidence Rules), and should be stricken from consideration by a jury on proper motion of the party adversely affected by such irrelevant evidence. See, *Clearwater Corp. v. City of Lincoln, supra*; §§ 27-401 and 27-402; Neb. Rev. Stat. § 27-705 (Cum. Supp. 1984).

The premise utilized by the appraiser was not merely a factual weakness in the underpinnings of an opinion on damages—a circumstance affecting weight and credibility. The appraiser's opinion was formulated on a misinterpretation or misconception of Nebraska law regarding NRD's rights acquired in eminent domain and maximum exercise of such acquired rights. In substance, the appraiser based his opinion

on NRD's exercising rights legally different from and substantially less than rights actually acquired in eminent domain under Nebraska law. An expert's opinion based on a misinterpretation or misconception of applicable law renders the opinion irrelevant. See, *Riso v. Pottawattamie Bd. of Review*, 362 N.W.2d 513 (Iowa 1985); *Stubbs v. State, Department of Transportation*, 332 So. 2d 155 (Fla. App. 1976); *State Department of Transportation v. Byrd*, 254 So. 2d 836 (Fla. App. 1971). See, also, Rules 705, 401, and 402, Nebraska Evidence Rules. The district court should have sustained Sorensens' motion to strike the opinion given by NRD's appraiser regarding damages to Sorensens' tract remaining after NRD's taking.

The errors committed by the district court affected Sorensens' right to have a jury consider the question of damages based on proper evidence, and, therefore, we reverse the judgment of the district court and remand this cause to the district court for a new trial.

Because we have reversed the district court's judgment awarding compensation to Sorensens, there is no final judgment present in the eminent domain proceedings. Therefore, in reversing the district court's judgment on the verdict for damages, we necessarily set aside the award of fees dependent on a final judgment for damages recovered in Sorensens' condemnation case. For this reason we need not consider NRD's question about propriety of fees awarded by the district court pursuant to § 76-720.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, J., participating on briefs.